## DUNNELL *a.* KETELTAS.

*Supreme Court, First District ; General Term, May,* 1863.

AGREEMENT TO APPOINT ARBITRATORS.—SPECIFIC PERFORMANCE.
—EQUITABLE JURISDICTION.—JURY TRIAL.

While a court of equity will not decree specific performance of an agreement to appoint arbitrators or appraisers to fix the value at which property is to be sold; yet, when there has been such an acquiescence in the agreement or such a part-performance that it would be inequitable not to enforce the execution of such a provision, the court will ascertain what is the fair value.[*]

Thus, where a lessor covenanted that at the expiration of the lease he would renew the lease, or pay for the improvements which the tenant might make, the value to be fixed by arbitration ; but when the lease expired he refused to renew or to appoint an arbitrator ;—*Held*, that the court might assess the value of the improvements.

In an action to compel a specific performance, and for an injunction till performance is made, it is competent for the court to render judgment simply for damages for the failure to perform, without allowing the defendant a jury trial.[†]

The case of Greason *a.* Keteltas (17 *N. Y.*, 491), limited.

Appeal from a judgment.

This action was originally brought by Obadiah Newcomb, in September, 1849, against Eugene Keteltas, as trustee of the estate of John Gardner, deceased, against Malvina Keteltas, Jules de Dion, and Jane his wife, as the *cestuis que trust* under the will of John Gardner, and against Orlando D. McLain and Stephen Palmer, executors of John Hyer, deceased. Newcomb died in 1857, and Henry G. Dunnell and others, his executors, were substituted as plaintiffs in the action. The nature of the action and the various proceedings taken, sufficiently appear in the opinion of the court.

The case came on for trial before Mr. Justice Sutherland as an equity case, at special term. Upon the opening of the case, plaintiffs' counsel claimed to recover in the action the value of

---

[*] Compare Johnson *a.* Conger, 14 *Ante*, 195.
[†] Compare Stevenson *a.* Buxton, 15 *Ante*, 352.

the buildings on the demised premises; the defendants insisted that this being in effect a claim to recover damages for a breach of the covenants in the leases, the same should be tried before a jury. The presiding judge refused so to direct, and defendants excepted.

Judgment was entered for the plaintiffs for the value of the three houses mentioned in the opinion, less the value of the use and occupation of the premises during the period that Newcomb and the plaintiffs had occupied them after the expiration of the term. The defendants appealed.

*Henry Nicoll*, for the appellants.—I. Upon precisely the same state of facts, the Court of Appeals, in Greason *a.* Keteltas (17 *N. Y.*, 491), held that a judgment for the value of the buildings was, in effect, an award of damages for a breach of the lessors' covenants in the lease; that the defendants had a right to have the same tried by a jury, and the judgment in that case was sustained only on the ground that they had waived such right. The defendants in the present action, instead of waiving such right, made the express objection at the opening of the case, before the judge who tried the same.

II. Two opinions in Greason *a.* Keteltas were delivered—one by Mr. Justice Selden, and the other by Mr. Justice Pratt; both concurred that the judgment below should be affirmed. The latter judge discussed only the question as to the power of the trustee, under the will of John Gardner, to grant leases for twenty-one years with the covenants referred to. There is no suggestion of dissent on his part from the views expressed by his learned associate, and there is, in fact, no conflict in their opinions. It is only where judges concur in a decision for different reasons that the case is not an authority for either proposition. (James *a.* Patten, 6 *N. Y.*, 9.)

III. A cause of action, capable of being enforced under the Code of Procedure, must be such as under the former system would have constituted either the subject of an action at law or a suit in equity. No demand is now maintainable unless it can be brought within one or the other of these cardinal, long-established, and well-settled landmarks of justice. (Cole *a.* Reynolds, 18 *N. Y.*, 74; Cropsey *a.* Sweeney, 27 *Barb.*, 310.)

IV. The facts stated in the complaint in this case constitute

a cause of action cognizable only by an action at law, and not by a suit in equity. 1. A breach of covenant on the part of the defendant Keteltas, as substituted trustee, is alleged, for which the plaintiffs were entitled to recover damages. Their remedy at law was full, complete, and adequate. (Greason *a.* Keteltas, 17 *N. Y.*, 491.) 2. A court of chancery never exercised the jurisdiction of decreeing specific performance of a covenant or agreement to appoint arbitrators or appraisers. The jurisdiction has been denied in numerous cases. (Blundell *a.* Brettargh, 17 *Ves.*, 232 ; Gourlay *a.* Duke of Somerset, 19 *Ib.*, 429 ; Agar *a.* Macklew, 2 *Sim. & Stu.*, 418 ; Greason *a.* Keteltas, 17 *N. Y.*, 491 ; Scott *a.* Avery, 36 *Eng. L. & Eq.*, 1.) 3. There is no other head of chancery jurisdiction under which the plaintiffs could have brought their case as a suit in equity. 4. A court of equity has no jurisdiction to award damages for the breach of a covenant or agreement. If it can do so in any case, it is only where its jurisdiction has attached for other reasons, and where the relief in the nature of compensation or damages is ancillary to other equitable relief to which the plaintiff may have shown himself entitled. (Hatch *a.* Cobb, 4 *Johns. Ch.*, 559 ; Kempshall *a.* Stone, 5 *Ib.*, 193 ; Bradley *a.* Bosley, 1 *Barb. Ch.*, 126, 150 ; Shephard *a.* Sandford, 3 *Ib.*, 127 ; Sainsbury *a.* Jones, 5 *Myl. & Cr.*, 1.) 5. Had this case been presented to the court under the former system, the complaint would have been dismissed for want of equity. Defendants therefore had a right to a jury trial.

*Mitchells & Hinsdale*, and *Charles P. Kirkland*, for the respondents.—I. Every question affecting the merits in this action has been decided in favor of the plaintiffs by the decision of the demurrer in this case, made at general term in 1855, and by the Court of Appeals in the case of Greason. *a.* Keteltas (17 *N. Y.*, 491). In that case, the lease was given by the same trustees, and was in all its covenants and provisions identical with the lease in this case. There is nothing for this court now to decide but questions of practice, and perhaps review the findings of fact on some minor matters.

II. The exception taken to the refusal of a jury trial cannot be sustained. The question presented is, whether this action is an equitable action triable by a judge at special term, or

whether it is a legal action which should have been tried by a jury. In Marquat *a.* Marquat (12 *N. Y.*, 341), the court gives this general rule for determining the nature of an action, "The case made by the complaint and the limits of the issue alone determine the extent of the power of the court." In other words, the issues made by the pleadings fix the nature of the action without regard to the relief that may be finally given. In N. Y. Ice Co. *a.* Northwestern Ins. Co. (23 *Ib.*, 357), this doctrine is sustained.

III. The pleadings in this case present issues of an equitable nature, as well as those of a legal nature. The whole frame of the complaint is that of an equity bill. The summons asks for relief. The prayer is for specific performance or payment for the building, and also asks for an injunction. The injunction was granted, and remained in force nearly ten years. The subject of the action is one peculiarly within the province of a court of equity. The principal defendant is a trustee. The construction of a will and the discharge of trusts are involved in this action. The case was practically *ab initio* treated by both parties as an equity case.

IV. In addition to the general nature of the action stated above, it contains certain specific, equitable issues, which fix the character of the action.

V. A court of law could not give the proper judgment in this action. A judgment for damages against the trustee might afford no relief. The direction of the court charges the estate of John Gardner with the payment of this judgment, whoever of the defendants may have the property. A court of law could not give such a judgment. (*Story's Eq. Jur.*, §§ 27, 29, 33.)

VI. There never would have been a serious question about this being an equity cause, but for the remarks of Judge Selden in Greason *a.* Keteltas (17 *N. Y.*, 491). He concedes in his opinion that no exception was taken on this point, and, therefore, all that he says of what would have been the effect of such an exception is clearly *obiter dictum.* There seems to be no good grounds for the refinements Judge Selden makes. The substance of the covenants is, that the grantors alone should have the option to renew the leases or pay for the buildings. Their election to renew the leases was to be signified by neglect-

ing or refusing to pay for the buildings. If the grantor did not pay, it was to operate as an election on his part to renew the leases. Now if such a decree as Judge Selden indicates would be "unobjectionable," it would be much less objectionable to hold that by declining to appraise the buildings the trustee declined, from the first, one alternative of his covenant, and that was to pay for the buildings. The court would only have to make the "unobjectionable" decree indicated by Judge Selden, "that unless the defendants should voluntarily select an appraiser, they should renew the lease." The trustee would then understand that if he did not select an appraiser, he would lose one alternative of his covenant, the right to pay. There would then remain only the other alternative to renew the leases, which Judge Selden says could be enforced in a court of equity.

VII. A court of equity would have power to order a reference to ascertain the value of buildings, or of rents in such a lease, rather than to have justice fail. The covenant to renew the lease being confessedly a good covenant, one that held within itself a sacred right and a large interest of the lessee, it is the duty of a court of equity to protect that right and interest. This matter has not been fully and fairly passed upon by the court of last resort, and it is the duty of this, the highest court in this city, to see to it that the interest of property-holders here be not sacrificed by such an imperfect presentation of the question, as in the case of Greason *a*. Keteltas.

VIII. The equitable nature of the action thus established, it can make no difference that the counsel, in his opening, claimed to recover the value of the buildings. Such claim could not alter the nature of the case as made by the pleadings, and as presented by them to the judge for trial. *Non constat*, but that, at the close of the proofs, the judge might deem the plaintiffs entitled to a judgment for a specific performance, instead of a judgment for damages. If the defendant wished this issue tried by a jury, he should have procured an order to settle the issue, and have it tried at a circuit pursuant to the rules provided for such cases.

By the Court.*—Clerke, J.—This action was commenced in September, 1849, to restrain the defendants from proceeding by action of ejectment, or by any other process, to dispossess the plaintiffs or any of their tenants of certain lots, or of any of the buildings or improvements thereon; and from disturbing them in the possession and occupation of the same, until the expiration of the term for which renewed leases were, by the terms of certain original leases, to be granted; and that the defendants, or some of them, might be decreed specifically to perform the covenants in relation to paying for buildings, or renewing and granting new leases. The original leases referred to were made the 26th of March, 1828; and, among other things, they provided that at the expiration of the term demised (21 years), the value of the buildings and improvements made and erected in pursuance of the lease should be ascertained by two sworn appraisers, one of them to be chosen by each of the parties to the lease; or should be determined by a sworn umpire to be chosen by the appraisers, in case they could not agree. It was also provided if the party of the first part should not pay unto the party of the second part the amount of such valuation within thirty days after the valuation made and delivered in writing to the party of the first part, then the latter covenant that they will again demise the premises for another term of twenty-one years, upon such rent as shall be agreed upon between the parties, or as shall be determined by two sworn appraisers, or, if they should not agree, by an umpire. The original leases in question were made by James Gardner and John Hyer, as surviving executors of the last will and testament of John Gardner—two of them to Obadiah Newcomb as lessee, and the remaining one to Samuel Gage as lessee. Obadiah Newcomb, by deed of assignment, on the 22d of April, 1829, became assignee of the lease to Gage. James Gardner having died, the defendant Keteltas was substituted in his place as executor and trustee; subsequently, Hyer also died, so that Keteltas is the sole surviving executor and trustee.

It is not now disputed that the trustees had power to make these leases, although this power was controverted in this action by means of a demurrer to the complaint. This question was

* Present, Sutherland, P. J., Clerke and Mullin, JJ.

decided in favor of the plaintiffs at general term, in 1855 ;*
and, as I have said, is now uncontroverted.

But it is contended on behalf of the defendants that the facts
stated in the complaint constitute a cause of action cognizable
only in an action at law, and not in equity; that a court of
equity never exercised the jurisdiction of decreeing specific
performance of covenants or agreements to appoint arbitrators
or appraisers; and if the plaintiffs have any remedy, it is for
damages only for breach of the covenant, which can only be
ascertained and awarded by a jury, unless the defendants waive
their right to a trial by jury, which they have not done in this
case.

It is true, indeed, as a general rule, that a court of equity
will not decree specific performance of a covenant or agreement
to appoint arbitrators or appraisers. Where, upon a contract
for the sale of property, the price is not fixed, but is left to be
determined by certain persons named in the contract, the court
will not force them to a decision, and will not undertake to
perform the duty intrusted to them; so that if they do not fix
the price the agreement must fail, unless, under certain circum-
stances, there has, notwithstanding the defect, been an acquies-
cence under it, or such a part-performance that it would be
inequitable not to enforce its execution. In such a case, the
court will ascertain what is the fair value. Where, also, the
agreement was to sell at a fair valuation, and no persons were
appointed to make it, there being nothing to preclude the
court's interference, a court of equity has taken upon itself to
determine what is a proper price, and has decreed a specific
performance accordingly. In fact, where any term of a con-
tract, in all other respects complete, is left to the determination
of others, and the same is not of the essence of it, the court will
take upon itself to decide that matter, and will thereupon
decree a specific performance. (See *Jeremy's Equity*, 442, 443,
and cases there cited.) I think, also, the principle is recog-
nized, that in equity no man must set up a defence growing
out of his own misconduct. Where, for instance, a person
agrees to sell an estate at a price to be fixed by referees on or

---

* See Newcomb *a*. Ketteltas, 19 *Barb.*, 608 ; and Greason *a*. The same, 17 *N.*
*Y.*, 491.

before a certain day, but he refuses permission to the referees to come upon the land, and thereby prevents the valuation from being made within the prescribed time, a specific performance should be decreed. (Morse *a*. Merest, 6 *Mad.*, 27.) There the vendee was not confined to his action for damages, but he obtained specific relief. In the case before us, the defendant refuses to appoint an appraiser or to renew the lease, in the mean time threatening to dispossess the plaintiff by ejectment, or to resort to some method by which he may put himself in possession of the premises without first ascertaining and paying the valuation, which the lease specifically provides. That is, he threatens, by a strict technical legal right, to deprive the plaintiffs of a possession improved and rendered valuable by the money and interest of the latter, without first complying with the promise which induced the plaintiffs to make the possession valuable. Under such circumstances, the plaintiffs were entitled to seek for the interposition of a court of equity. It would be unjust, and plainly contrary to equity, to suffer them to be dispossessed until the amount of the defendants' liability was ascertained, and until the court could decree the reimbursement of this amount, and enjoin the defendants from resorting to an action of ejectment until the amount was paid. The court had the power, under the circumstances of this case, to make such a provision, and thus to save the plaintiffs from the risk of a personal action for damages against a defendant who may not possibly be a responsible person. The court would thus provide, as it were, a material guaranty for a party, under circumstances calling for its extraordinary interposition. It is no answer to this to say that the court, in fact, made no such provision in the present case. It is enough if the court had the power to do so; if it had, the case was properly within its cognizance, and, being once properly within its cognizance, it had a right to retain jurisdiction of the subject-matter of the controversy, and to make such a disposition of it as justice required.

If, indeed, we were bound by the observations offered by Judge Selden in Greason *a*. Keteltas (17 *N. Y.*, 496), it would be our duty to reverse this judgment. But as those observations were merely *obiter dicta*, and it being unnecessary that they should be considered, or even entertained in deciding

that case, we are of course not concluded by them ; and, I am sure, if the precise point before us in the present case were discussed and examined by the Court of Appeals in Greason *a.* Keteltas, the court, and Judge Selden himself, would have arrived at a very different conclusion from that intimated in his opinion. The two English cases, to which he refers, are essentially different from the present case, and from Greason *a.* Keteltas. In Gourlay *a.* Duke of Somerset (19 *Ves.*, 429), there was no previous lease, and therefore no possession or part-performance. It was a mere contract to sell land at a price to be ascertained by one Gale, a surveyor. In fact, it was not a contract on which either an action at law or in equity could be maintained ; it was not a valid contract at all, which could be the subject of any remedy known to the law. It was a mere consent to arbitrate, which either party could at any time revoke before the award. The other case to which Judge Selden refers (Agar *a.* Macklew, 2 *Sim. & Stu.*, 418) bore a greater resemblance to the present case. There was a provision in a lease, that, at any time during the term, if the lessees should be desirous of purchasing the estate, they should be at liberty to purchase the same for such price as should be fixed upon by two persons, indifferently to be chosen as surveyors or appraisers, &c. Sir John Leach, vice-chancellor of England, before whom the case was heard, gives no opinion, except to state in very general terms that on the authority of Gourlay *a.* Duke of Somerset, and other similar cases, he must dismiss the bill. But it is evident from the arguments of counsel, particularly that of Mr. Sugden, the defendant's counsel, that the case was decided on the principle that the court had no jurisdiction to compel the first step ; and it will never direct by its decree an act over the execution of which it has no control. Suppose, as the counsel observed, the court were to decree that the defendant should name an arbitrator, how could it compel the execution of that decree, or even if the arbitrator were named, how could it compel the arbitrator to act.

In short, the principle pervading the whole of these cases to which we have been referred (Blundell *a.* Brettagh, 17 *Ves.*, 232, among the rest), is, that the court will never interfere in cases where it cannot enforce the acts which it is called upon to direct. It must have the subject, or the parties, within

its grasp. In the present case, it has both within its grasp. It can effectually enforce whatever the nature of the case may require, and whatever may be agreeable to equity. It could have enjoined the defendants from proceeding to dispossess the plaintiffs until they pay the latter the value of their improvements, which they, or their predecessors, solemnly stipulated they would pay; and it matters not how the value was to be ascertained, they were bound in equity and good conscience to pay it.

As I have already intimated, it does not affect the question of jurisdiction, that the court, in fact, gave judgment for a sum of money, instead of decreeing an injunction until the defendants should specifically perform. The court, as I have endeavored to show, has, I sincerely trust, ample power to afford specific remedies in cases of this nature. In this city, and probably in other parts of the State, leases of this nature are very common, and have proved greatly advantageous alike to the owners of unproductive property, and to persons of small capital willing to invest it in making such property productive. Such leases, also, are of great public benefit; they have contributed in a considerable degree to the progress of the city, and affording suitable accommodations for its inhabitants. It would thus be a serious public injury, if these contracts could not be effectually enforced; and it would be fruitful of widespread injustice to individuals and families, if the holders of leases of this description could be ousted on the expiration of the first term without any compensation for their investments, and with no other remedy than an action for damages, it may be, against an irresponsible person, though it is not pretended in the present case, fortunately, that the defendants are not responsible.

We consider all the other legal objections untenable, and certainly we are not disposed to disturb the findings of facts, even if there was any conflict of evidence.

Judgment should be affirmed, with costs.