## Kaufmann *v.* Liggett, Appellant.

209          87
d 36 SC 495

*Landlord and tenant—Equity—Jurisdiction.*

A court of equity has jurisdiction in a proper case to restrain proceedings under the landlord and tenant acts of 1772 and 1863.

*Landlord and tenant—Lease—Renewals.*

As a general rule in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself.

*Landlord and tenant—Extensions—Arbitration—Rental—Specific performance.*

Where a lease provides for an extension for a period of years, and that the rental shall be determined by arbitrators, and the lessee gives the notice of renewal required by the lease, but the arbitrators disagree and fail to fix the rental, the lessor has no right to dispossess the lessee during the extended term, inasmuch as the fixing of the rental is not of the essence of the contract.    In such a case while a court of equity cannot compel an arbitration, it has the power either by itself or by its officer to fix the amount of the rent to be paid by the lessee during the extended term.

Argued March 14, 1904.    Appeal, No. 16, Oct. T., 1904, by

defendants, from decree of C. P. No. 1, Allegheny Co., June T., 1903, No. 478, on bill in equity in case of Jacob Kaufmann et al. trading as Kaufmann Bros. formerly as J. Kaufmann & Bros., v. John Liggett et al., Trustees of Sarah L. Hitchcock, Deceased. Before DEAN, FELL, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Bill in equity for an injunction.

The prayers of the bill were as follows :

1. For an injunction restraining respondents from interfering with the complainant's possession of the premises, and from instituting or proceeding with any proceedings at law for that purpose.

2. That the court shall fix and determine the rental to be paid by the complainants for the premises for the term of five years beginning on April 1, 1903, and the terms of payment thereof.

3. General relief.

The facts of the case are stated in the opinion of the Supreme Court.

The court entered the following decree :

And now, to wit: October 28, 1903, this case having been set down for argument upon the argument list, upon the exceptions to the findings of fact and conclusions of law, as found and entered of record upon the trial and hearing of this cause, and the same being submitted to this court upon the arguments and briefs of counsel of the respective parties, and the same duly considered, and the said exceptions dismissed, and the bill sustained, and directing that a decree be drawn temporarily enjoining the defendants from interfering with the possession of the plaintiffs, till further order of the court ; this court does now order and decree that an injunction be granted pending these proceedings, and until further order of this court against the defendants restraining them from proceeding to interfere with the plaintiffs' possession of the premises described in their bill by proceeding under the landlord and tenant acts of 1772 or 1863 or otherwise.

*Errors assigned* were in dismissing various exceptions to the findings and conclusions of the court.

*D. T. Watson*, with him *Marcus A. Woodward* and *John M. Freeman*, for appellants.—The court has no jurisdiction to grant the relief prayed for in the bill because the Hitchcock leases terminated March 31, 1903, by reason of the failure of the mode provided by the parties for the fixing of the rental: Hudson Canal Co. v. Penna. Coal Co., 75 U. S. 276; United States v. Goldenberg, 168 U. S. 95 (18 Sup. Ct. Repr. 3); Harrison v. Fortlage, 161 U. S. 57 (16 Sup. Ct. Repr. 488).

Sarah Hitchcock did not grant to the Kaufmanns the privilege of rerenting independent from and without fixing the rent, but on the contrary, she granted the privilege of rerenting at a rent certain: Wells v. DeLeyer, 1 Daly, 39.

In order, then, that the court may grant the relief, it is a primary and absolutely necessary condition of such a bill that it states a contract certain in all its parts, and which the court can order each party to specifically perform as it was made: Agnew v. Southern Avenue Land Co., 204 Pa. 192; Hammer v. McEldowney, 46 Pa. 334; Ballou v. March, 133 Pa. 64; Weaver v. Shenk, 154 Pa. 206; Zoebisch v. Rauch, 133 Pa. 532; Hunt v. Rousmaniere's Adm., 26 U. S. 1.

The following authorities show conclusively that where parties provide a particular mode of determining an essential element in a contract, and the mode agreed upon fails, there is no contract for the court to enforce: Milnes v. Gery, 14 Ves. 400; Hall v. Warren, 9 Ves. 605; Vickers v. Vickers, L. R. 4 Eq. 529; Darbey v. Whitaker, 4 Drew. 134; Cooth v. Jackson, 6 Ves. 12; Blundell v. Brettargh, 17 Ves. Jr. 232; Tillet v. Charing Cross Bridge Co., 26 Beav. 419; Firth v. Midland Ry. Co., L. R. 20 Eq. 100; Norfleet v. Southall, 3 Murph. (N. C. Eq.) 189; Hopkins v. Gilman, 22 Wis. 476; Morrison v. Rossignol, 5 Cal. 65; Pray v. Clark, 113 Mass. 283.

The fixing of the rental is unquestionably of the essence of the contract. There is no contract at all until this material term is inserted: Hopkins v. Gilman, 22 Wis. 476; Bigley v. Risher, 63 Pa. 152; Potts v. Whitehead, 20 N. J. Eq. 55; Norfleet v. Southall, 3 Murph. (N. C. Eq.) 189; Bernard v. Scott, 12 La. 489; Milnes v. Grey, 14 Ves. Jr. 400; Gourlay v. Duke of Somerset, 19 Ves. 429.

There is absolutely no ground of equitable estoppel in this case: Ramsden v. Dyson, L. R. 1 H. L. 129, 170.

A court of equity has no jurisdiction to try the case set out in the bill. The controlling question is whether or not the lease of complainant has terminated, and to try this question there is a full, adequate and complete remedy under the landlord and tenant acts: Pittsburg & A. Drove Yard Co.'s App., 123 Pa. 250; Brown's App., 66 Pa. 155; DeCoursey v. Guarantee Trust & Safe Dep. Co., 81 Pa. 217; Juergen v. Allegheny County, 204 Pa. 501.

*W. B. Rodgers* and *Edwin H. Stowe,* with them *J. Rodgers McCreery,* for appellees.—Equity has jurisdiction to determine the rental in this case for the term of five years from April 1, 1903.

The inducement, end and purpose was improvement of lessor's premises and establishment of a business therein, by securing to lessees time to reap the fruits of their outlay and efforts. The fixing of rental for an extension term is not of the essence of the contract: Dinham v. Bradford, L. R. 5 Chanc. App. Cases, 519; Fitzsimmons v. Lindsay, 205 Pa. 79; Backus's App., 58 Pa. 186.

The material thing in the mind of the parties was the notice. When that notice was given appellees were absolutely bound to take the premises for the term and appellants to grant the term. And therefore the fixing of the rent was not of the essence of the contract.

There is no time limited for the ascertainment of the rent, therefore that could not be considered as essential to the renewals.

Equity has jurisdiction: Dunnell v. Keteltas, 16 Abb. Pr. 205; Phila. Library Co. v. Beaumont, 39 Pa. 43; Boswell's App., 3 Penny. 305; Arnot v. Alexander, 44 Mo. 25; Viany v. Ferran, 5 Abb. Pr. (N. S.) 110; Piggot v. Mason, 1 Paige, Ch. 412; Gregory v. Mighell, 18 Ves. Jr. 328; Dilke v. Greene, 4 R. I. 285; Herman v. Babcock, 103 Ind. 461 (3 N. E. Repr. 142); Gourlay v. Duke of Somerset, 19 Ves. 429; Graver v. Fehr. 89 Pa. 460.

The landlord and tenant acts contemplate decision of matters of fact, by one not learned in the law, and do not apply to cases where the termination of the tenancy involves the decision of

a difficult legal question: Scott v. Fuller, 3 P. & W. 55; Newell v. Gibbs, 1 W. & S. 496; Pittsburg & A. Drove Yard Co.'s App., 123 Pa. 250; Brown's App., 66 Pa. 155; De Coursey v. Guarantee Trust & Safe Dep. Co., 81 Pa. 217; Juergen v. Allegheny Co., 204 Pa. 501; Denny v. Fronheiser, 207 Pa. 174; Clark v. Everly, 8 W. & S. 231; Davis v. Davis, 115 Pa. 261; Steele v. Thompson, 3 P. & W. 34.

OPINION BY MR. JUSTICE POTTER, May 2, 1904:

The complainants in this case, Kaufmann Brothers, leased certain premises on the southeast corner of Fifth avenue and Smithfield street in the city of Pittsburg, from Sarah L. Hitchcock for a term of years. By the leases, two in number, it was provided in language substantially identical, that the lessees should have the privilege of rerenting at the expiration of the first term, which ended April 1, 1898, for a period of five years more at a rental to be determined by four arbitrators, two selected by each party, with power in case of disagreement to choose an umpire, whose decision should be final and without exception or appeal. It was also stipulated that no such privilege of renewal should be granted unless the lessees gave written notice to the lessor or her heirs of their intention to exercise such privilege for six months prior to April 1, 1898. Also that if the arbitrators and umpire should not agree within two months after their appointment, then others should be chosen in the same manner. Also that if the lessees should occupy the premises for the term of five years from April 1, 1898, they should have a further privilege of lease for another period of five years, upon a like six months' notice, at a rental to be fixed and determined in the same manner. There was no provision in either lease covering the contingency of a failure to agree upon the part of the second set of arbitrators.

The lessees exercised their privilege of renewal for the five years beginning April 1, 1898, and the rental was determined according to the provisions of the leases. Six months prior to April 1, 1903, which was the termination of the first extension of five years, they gave notice of their intention to renew for another period of five years. Arbitrators were named by both sides in accordance with the provisions of the leases, but they failed to agree upon a rental or to select an um-

pire within two months.    A second set of arbitrators were then chosen.    But again there was a failure to agree, and upon April 9, 1903, the arbitration was dissolved and adjourned sine die.    Meanwhile, the respondents, who were trustees under the will of the lessor, she having died during the tenancy, had given notice to the lessees, under the landlord and tenant acts of 1772 and 1863, to surrender possession of the premises, and threatened proceedings to dispossess them.    The lessees then filed this bill against the trustees, praying (1) for an injunction to restrain them from proceedings at law to disturb or interfere with the complainant's possession of the premises, and (2) for a determination by the court of the amount of rental to be paid for the five years beginning April 1, 1903.

Upon the trial, the court made a full finding of facts, all of them being practically undisputed, and reached the following conclusions of law : 1. That equity has jurisdiction.    2. That there is no sufficient remedy at law.    3. That the landlord and tenant acts of 1772 and 1863 have no application.    4. That an injunction should be granted until further order.

Exceptions were filed to certain of the findings of fact, as being irrelevant and immaterial, and also to the conclusions of law and the opinion of the court.    These exceptions were dismissed and a decree was entered directing that an injunction be issued restraining the respondents from interfering with the possession of the plaintiffs until further order of the court, by proceeding under the landlord and tenant acts of 1772 and 1863, or otherwise.    The present appeal was then taken by the respondents.    The decree of the court below is not assigned for error, but the assignments are confined to the dismissal of the exceptions, to the conclusions of law reached by the court below.

That a court of equity has jurisdiction in a proper case to restrain proceedings under the landlord and tenant acts of 1772 and 1863, was expressly held in Denny v. Fronheiser, 207 Pa. 174.    Justice MITCHELL there said (p. 177) : " The jurisdiction of equity to restrain actions at law is too well established to require discussion, and there is nothing in the act of 1772 to give proceedings under it any immunity from such restraint in a proper case."    In that instance it was held that equity would not interfere, not because it is without jurisdiction to

do so, but because a proper case was not made out for its exercise.

The summary remedy provided under the acts of 1772 and 1863 is not adapted to the determination of intricate and delicate questions of law. As the present chief justice said in the case just cited (p. 179), " The act was passed in the interests of justice to give against tenants who hold over without even color of right after the expiration of their terms, a better remedy than the old, cumbersome, dilatory and expensive one by action of ejectment." But as Justice STERRETT said in Davis v. Davis, 115 Pa. 261, speaking of the provisions of the act of 1863 (p. 265), " It also clearly indicates that the legislature in providing a remedy so summary that the person in possession may be ousted therefrom in a few days, intended to further limit the jurisdiction of magistrates and restrict the remedy to plain cases of ordinary tenancy." And further in the same case (p. 266) he says, " In view of the fact that the special and summary jurisdiction given to justices of the peace and magistrates by the act of 1863, and supplements, has been so sharply defined by the legislature, and limited to a class of cases that are of easy solution, it would illy become us, even if we had the power to do so, to enlarge its scope so as to embrace cases which the average justice of the peace or city magistrate is incompetent to dispose of."

In the present case, the appellees contend for the right to hold the premises in dispute, under the covenants in the lease providing for a renewal for five years from April 1, 1903. This raises a somewhat complicated question of law which must be settled before it is possible to determine whether or not the right of possession in the lessees ended with the term which expired March 31, 1903. Had no notice been given by the appellees, six months prior to that date, of their intention to exercise the right of renewal which was expressly granted to them by the original lease, then there would be but a simple question of fact for determination, entirely within the province of the justice and the jury to decide. But it is undisputed that the six months' notice was given, and the rights of the parties now turn upon questions of law, rather than upon any disputed facts.

We are clear that under the circumstances of the present

case, neither the act of 1772 nor that of 1863 supplies an adequate remedy, nor do they provide a proper tribunal for the determination of the questions involved. They cannot therefore be allowed to operate as a bar to the maintenance of this bill.

In the second prayer of the bill, the lessees ask that the court shall fix and determine the rental to be paid by the plaintiffs for the premises for the term of five years from April 1, 1903. But it is urged by counsel for the appellants that the court has no jurisdiction to grant this belief, because, as they allege, the leases terminated March 31, 1903, by reason of the failure of the mode provided by the parties for the fixing of the rental.

As we have seen, the original term in both leases expired April 1, 1898, but each provided for similar renewals, one for five years from April 1, 1898, and another for a further term of five years from April 1, 1903; and by another agreement, two additional extensions from that date were provided on both of the above leases, one for five years, and at its expiration, another for four years; so that extensions are provided for which run, at the option of the lessees, until April 1, 1917. The leases therefore contemplate, in addition to the first term of thirteen years, four extensions in all, three for five years each, and one for four years. The entire contract embraces a period of thirty-two years' occupancy of the premises by the lessees, if they choose to avail themselves of the rights placed at their disposal by the terms of the agreement. The rental for the first thirteen years was fixed by the parties at the outset. That for the first extension of five years was fixed by arbitration in accordance with the terms of the lease; and the present dispute grows out of the failure upon the part of the arbitrators to fix the rental for the second period of extension of five years.

The language of the original lease of 1885 is as follows: " And the said parties of the first part hereby grant unto the said J. Kaufmann & Brothers or their assigns, the privilege of rerenting the premises at the expiration of the first term of thirteen years for a period of five years longer." It will be noticed that here is a direct and positive grant of the right of renewal. It is not left to be determined by anybody else,

but is definitely settled by the parties. And with reference to the second extension of five years, the language is no less clear; it is :. " And the said parties of the first part further agree to and with the said parties of the second part that should they occupy the said premises for the said five years above designated, that they hereby grant to the said J. Kaufmann & Brothers a further privilege of lease for a period of five years upon a like six months' notice." So that in both cases there was an absolute contract between the parties to the lease stipulating at the time of the making of the lease, not only for one term of thirteen years but for the privilege of further extensions. Clearly the question of whether or not an extension should be made was not left open to be determined by arbitration. That much at least was definitely fixed by the contract. It is true that these extensions were to be at a rental to be fixed by arbitration, and the manner and method of the arbitration was pointed out. But when the lessees exercised their right to an extension, by giving notice to the lessors six months before the expiration of the pending term, the lessees were then absolutely bound to take the premises for the extended term; and the lessors were bound to the grant of the additional term. With that matter, the arbitrators had nothing to do. It was the amount of the rental for the buildings and premises for the extended periods which alone was left to be determined by arbitration.

The learned judge of the court of common pleas reached a conclusion which he expressed in his opinion as follows : " The plaintiffs having exercised their option for a renewal of the leases within the time prescribed, their right to a lease and to keep possession of the premises for a new term of five years, was vested in them regardless of whether the arbitrators fixed the amount of the rent or not. If the right to renewal had been intended to depend upon the rent being fixed in advance, it would not only have been the easiest but most natural thing to have said so. It seems clear to us that no such result was even thought of by either party." We agree with the conclusion thus stated. The lessees were stipulating for what was certainly to them a valuable privilege in providing for a long term made up of successive extensions. Under the contract, that privilege was absolutely secured to them, provided they gave six months' notice, prior to the expiration of each term,

of their desire to take advantage of the agreement for the extension.

The arbitrators were appointed, in the language of the lease, "for the purpose of determining the amount of rent which the said J. Kaufmann & Brothers shall pay per year during the said five years." The right to a renewal was not in any way before them for consideration. Can it be said that, because the arbitrators failed in their duty, which was to determine the amount of the rental or to agree upon an umpire, whose decision upon that subject should be final and conclusive, the lessees are to be deprived of the privilege of a renewal, which they had taken the pains to secure for themselves by means of carefully drawn stipulations in the contract?

To the mind of the trial judge, the specifications of the lease for successive renewals at the end of the intermediate periods, appeared to be the substantial part of the contract, and he viewed the manner of fixing the rental value as merely incidental thereto. In his opinion he thus states his conclusion: "It is evident that the essence of the contract in the leases was the options for renewals, and that the parties so understood it. This is strengthened by the fact that as the leases were made to terminate (subject to the options) in 1917; and by the following clause of the agreement of 1897, viz: 'It is desired by the said parties of the second part for the better security for the future of their business interests where the same is at present located to provide for and obtain the right of future options. . . . And the parties of the first part deeming the grant of such options as of advantage to the estate of Sarah L. Hitchcock, . . . . and . . . . it being understood that on failure to exercise any of the said options within the time and according to the terms of said leases as aforesaid, the leases terminate with the term in which notice of such option is to be given according to the terms thereof.' Now, under these somewhat extraordinary conditions, the real subject-matter of the contract being a right to the renewal of the leases, and fixing of the rent being only secondary, the terms as to rental being in substance and effect that the rent shall be a fair one fixed by an impartial tribunal; for that is all that the clause as to fixing the rent means; has equity jurisdiction? We think it has."

After careful consideration of this question, in the light of

the elaborate argument of counsel for the appellant, we agree with the conclusion of the court below that the fixing of the rental value of the premises for the period in dispute in this case is not of the essence of the contract, but that the right of renewal constituted the substantial element in this portion of the agreement. It was that feature which, in great measure, justified the lessees in erecting upon the premises a large and costly building, adapted to the needs of their business. As a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself: Taylor's Landlord and Tenant, 9th ed., sec. 81.

Nearly all of the cases cited by the appellants, to sustain their contention that the fixing of the rental value is of the essence of the contract, were proceedings to enforce specific performance of contracts for the sale of land; and in this class of cases it has invariably been held that the price to be paid is an essential element of a contract of sale; and unless the price has been fixed, the contract is not certain and cannot be enforced. We are not, however, here dealing with a contract for the sale of land, but we are dealing with covenants for the renewal of a lease, and that, too, in a case where the lessees have been in possession of the premises under the lease for more than eighteen years, and have made valuable and extensive improvements upon the property during that time, and have built up a large and extensive business thereupon. During all these years, the lessors have been receiving a rental for the property which was entirely satisfactory. There is a marked distinction between the rule which may equitably be applied to a contract for the sale of land, and that which should govern in an agreement for the renewal of a lease where possession has been enjoyed, and improvements made during the first period under a reasonable expectation of benefits to be derived therefrom, during future extensions of the lease at the option of the lessee.

One of the cases upon which the appellants rely is Milnes v. Gery, 14 Ves. 400. The contract in that case was one for

the sale of land, and the court, by Sir William Grant, said that the price is of the essence of a contract of sale. But the same eminent judge afterwards delivered the opinion in Gregory v. Mighell, 18 Ves. Jr. 328. In this case, there was a parol agreement for a lease of twenty-one years, the amount of rent annually to be fixed by two indifferent persons, under which the lessees entered and made improvements. Sir William Grant here held that the failure of the arbitrators to fix the rent could not affect the agreement, but that the court would find some means of completing its execution. Specific performance was accordingly decreed, and it was referred to a master, to ascertain what the rent ought to be. And in Gourlay v. Duke of Somerset, 19 Ves. 429, a lease was to be given with such conditions as the defendant's steward should judge to be reasonable and proper; or in the event of his death, by some other person to be mutually agreed upon. The question arose under a bill filed by the tenant whether the terms of the lease should be settled by the steward of the defendant or by a master of the court. And in this case Sir William Grant held that when the agreement to give a lease is binding, and such as ought to be executed, it does not require foreign aid to carry the details into execution.

The appellants also cite the case of Hopkins v. Gilman, 22 Wis. 476. This was the case of a letting, and not a sale, but it seems favorable to the position of the appellees, rather than of the appellants. The lease stipulated that, at the end of the term, the lessor should have the value of the land, independently of the improvements placed upon it by the lessee, determined by the arbitrators to be chosen in a specified way, and that the lease should then be renewed at a percentage of the valuation, or else the improvements taken at a valuation to be fixed by arbitrators. It was held that while the court would not compel an arbitration, it would restrain the lessor from proceeding at law to dispossess the tenant until the improvements were paid for. And also that a court of equity had power itself to ascertain the value of such improvements, notwithstanding the provisions of the lease as to arbitration. It was there said (p. 481), " The court having jurisdiction of the cause, should provide and grant any relief consistent with the case made by the complaint and embraced within the issue."

In Dinham v. Bradford, L. R. 5 Chancery Appeal Cases, 519, two partners made an agreement containing a provision that on the determination of the partnership, one partner should purchase the share of the other, at a valuation to be made by two persons, one appointed by each partner ; and the partnership was carried on for some time under that agreement ; held, that though the valuation could not be so made, because no umpire was provided, the court would carry the partnership agreement into effect by ascertaining the value of the shares. Lord HATHERLY said, inter alia (p. 523) : " This case is not like that of the sale of an estate the price of which is to be settled by arbitration, but is a case in which the whole scope and object of the deed would be entirely frustrated if the court were to apply the well known doctrine to the present state of circumstances. In cases of specific performance the matter is very plain and simple. One person agrees to sell his estate in a given way, and no rights are changed by the circumstances of that method of selling the estate having failed. The estate remains where it was, and the money where it was. But here is a man who has had the whole benefit of the partnership in respect to which this agreement was made, and now he refuses to have the rest of the agreement performed, on account of the difficulty which has arisen. It is much more like the case of an estate sold, and the timber, or a part, to be taken at a valuation, the adjusting of matters of that sort forming part of the arrangement, but being by no means the substance of the agreement; and in such cases the court has found no difficulty. If the valuation cannot be made modo et forma, the court will substitute itself for the arbitrators. It is not the very essence and substance of the contract, so that no contract can be made out except through the medium of the arbitrators. Here the property has been had and enjoyed, and the only question now is, what is right and proper to be done with regard to settling the price ? "

In Dunnell v. Keteltas, 16 Abb. Pr. 205, the law is stated as follows (p. 211): " It is true, indeed, as a general rule, that a court of equity will not decree specific performance of a covenant or agreement to appoint arbitrators or appraisers. Where upon a contract for the sale of property, the price is not fixed but is left to be determined by certain persons named in the

contract, the court will not force them to a decision, and will not undertake to perform the duty intrusted to them; so that, if they do not fix the price, the agreement must fail, unless, under certain circumstances, there has, notwithstanding the defect, been an acquiescence under it, or such a part performance that it would be inequitable not to enforce its execution. In such a case, the court will ascertain what is the fair value. Where also, the agreement was to sell at a fair valuation; and no persons were appointed to make it, there being nothing to preclude the court's interference, a court of equity has taken it upon itself to determine what is a proper price and has decreed a specific performance accordingly. In fact, where any term of a contract, in all other respects complete, is left to the determination of others, and the same is not of the essence of it, the court will take it upon itself to decide that matter and will thereupon decree a specific performance. See Jeremy's Equity, 442, 443 and cases there cited."

In Viany v. Ferran, 5 Abb. Pr. N. S. (N. Y.) 110, it was held, under facts similar to those of the present case, that a court of equity had power to compel the execution of a renewal lease and also to determine the rent to be paid for the new term.

The contention of the appellants that the fixing of the rental is of the essence of the contract, does not seem to be borne out by the authorities. Thus, in Taylor's Landlord and Tenant, 9th ed. sec. 14, "A stated rent is not essential to the contract; because, from favor, or for a consideration passing to the lessor at the time of its inception, a lease, beneficial in its nature to the lessee, may be made without any reservation of rent." And several authorities are there cited to sustain the proposition.

In Weaver v. Wood, 9 Pa. 220, GIBSON, C. J., held that an agreement for a lease at a fair rent is sufficiently certain to be enforced. And in Mitchell v. Commonwealth, 37 Pa. 187, in the opinion of this court delivered by THOMPSON, J., an agreement for holding premises rent free was construed to be a lease.

One of the latest cases in which the question here involved was considered is that of Grosvenor v. Flint, 20 R. I. 31,* where

---

* Also reported 37 Atl. Repr. 304.—REPORTER.

the court said : " The case is before us on appeal, answer, replication and proof. The case presents two questions for decisions, (1) Whether the court, by a master or otherwise, can appraise the rent payable to the complainants, if the arbitration provided for in the lease has failed ; and (2) Whether as a matter of fact, the arbitration has failed.

In answer to the first question we think it is clear that the court has jurisdiction to do, either directly or by its master, what the appraisers or arbitrators could have done under said provision of the lease, if it is shown that the arbitration has in fact failed. And refusal to agree to a third man constitutes such failure : Brock v. Dwelling House Insurance Co., 26 L. R. A. 623 ; Niagara Fire Insurance Co. v. Bishop, 154 Ill. 9 ; * Brown v. Harper, 54 Iowa, 546 ; † Watson v. Duke of Northumberland, 11 Ves. Jr. 153. The covenant to appraise the rent does not stand alone, but is merely a subsidiary part of the lease in question. That is to say, the manner of determining the amount of rent to be paid is a matter of form, rather than substance. And if it appears that this question cannot be determined in the manner provided for in the lease, by reason of the refusal of one party to the contract to do what in equity it ought to do, the court will determine it, upon the application of the other."

The question is also fully discussed, and the authorities bearing upon it are carefully considered by Judge DILLON in Tscheider v. Biddle, 4 Dillon, 55.

The reasoning in Coles v. Peck, 96 Ind. 333, is also helpful in determining the question at issue.

In that case there was a lease providing for the erection of a building with an option to purchase, the price to be determined by arbitrators. The court held that the plaintiff was entitled to equitable relief on a failure of the arbitration. Many American and English cases are cited and commented upon. After referring to the doctrine laid down by Milnes v. Gery, 14 Ves. Jr. 400, that contracts for the sale of land will not be specifically enforced when the purchase price is to be determined by arbitrators and such arbitration has failed, the court says (p. 339) : " The doctrine of that case has, however,

---

* Also reported 31 N. E. Repr. 1102.

† Also reported 6 N. E. Repr. 747.—REPORTER.

been followed by the courts of the United States, only in a
limited and restricted sense, and is mainly applied only to con-
tracts for reference in which, by the form and language of the
stipulation, the mode of determining the price by values on arbi-
tration, is made an essential provision—in fact condition—to
the validity of the agreement, and to cases in which the parties
can be easily placed in statu quo, or where an action for dam-
ages can be made to afford an adequate remedy."

After a careful consideration of all the cases bearing upon
the subject which have been brought to our attention, or which
we have found, we are satisfied that the authorities well agree
that equity will not compel an arbitration, and this upon the
very good ground that the courts remain open to the parties,
with better provisions for securing justice than are possessed
by arbitrators.   But that in cases of renewal leases, the weight
of authority clearly favors the view that the tenant in such a
case has a quasi proprietorship ; a right, lacking merely a valua-
tion ; and that the grossest inequity would be worked, should
he lose his right through a failure upon the part of the arbi-
trators to fix a valuation.   While, therefore, a court of equity
will not undertake to compel an arbitration, which it cannot
control, it will in such case make an appraisement itself, or di-
rect it to be done by its own officer, and will thereafter enforce
specific performance of the contract, upon the terms so found.

Under the facts of the present case, the court has complete
jurisdiction in equity to fix the amount of the rental to be paid
by the lessees, during the extension of five years from April 1,
1903, and to enforce specific performance of the agreement pro-
viding for such extension.

The assignments of error are overruled, and this appeal is
dismissed, at the cost of the appellants.   The decree of the
court below is affirmed, and it is ordered that the record be re-
mitted for further proceedings in accordance with this opinion.