# Wilson *v.* Wilson, Appellant.

*Equity—Injunction—Proceedings at law—Fraud—Landlord and tenant.*

1. When a tenant who has entered under the real owner is induced to accept a lease from another who is not the owner, by the false representation that the title has been transferred to him, the transaction is a fraud upon the tenant; and when the pretended landlord attempts to use such a fraudulent lease as the foundation of a summary action to dispossess the rightful owner under the landlord and tenant acts, equity will interpose to restrain by injunction the proceedings at law.

*Equity—Equity practice—Injunction affidavit—Preliminary injunction.*

2. Where the court has granted a preliminary injunction upon injunction affidavits, it cannot be convicted of reversible error in permitting two other affidavits to be filed nunc pro tunc, where it appears that the defendants did not move to dissolve the injunction, nor appeal from it, but proceeded to final hearing, that the two affidavits in question were not used as evidence at the final hearing, and that the parties who made the affidavits appeared at the hearing and were fully cross-examined.

*Appeals—Assignments of error—Evidence.*

3. An assignment of error to the admission of evidence violates rule XVI if it does not include in the assignment the evidence admitted.

*Equity—Findings of fact—Evidence—Fraud.*

4. The appellate court will not reverse a finding of fact of the lower

court to the effect that a conveyance of land had not been made, where such finding is based upon sufficient, although contradicted evidence, and no manifest error is made to appear.

Argued Dec. 4, 1912. Appeal, No. 97, Oct. T., 1912, by defendants, from decree of C. P. Schuylkill Co., March T., 1909, No. 1, on bill in equity in case of Catherine Wilson and Thomas Wilson v. James Wilson, John Mullen, Justice of the Peace, and Elemer Boyer, Constable. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Bill in equity for an injunction.
The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree awarding injunction.

*M. M. Burke*, with him *J. F. Mahoney* and *Edgar W. Bechtel*, for appellants.

*William Wilhelm*, for appellees.

OPINION BY PORTER, J., February 27, 1913:
This is a bill to restrain the defendants from executing any process under the landlord and tenant acts, to evict the complainants from possession of certain premises. The court below overruled a demurrer, whereupon the defendants answered, issue was joined and the matter proceeded to a final hearing, after which the court granted the relief prayed for and issued a perpetual injunction restraining the execution of any process to dispossess the complainants of the property involved. The defendants appeal.

The bill sufficiently averred the following facts. The property consisted of a leasehold estate of land of which the Philadelphia & Reading Coal & Iron Co. was the owner in fee, upon which was erected a building which had been used for a schoolhouse. The school authorities,

having erected another building, sold the old building and leasehold estate, in 1898, to Julia Wilson, the mother of Thomas Wilson, one of the plaintiffs, and of James Wilson, the defendant. Julia Wilson, about eight years before the event out of which this controversy arose, leased the building and ground to the complainants, who entered upon the same as her tenants, using the building as a dwelling, and continued to so occupy it until March 31, 1908. James Wilson, respondent, represented to the complainants, on March 31, 1908, that the leasehold estate had been transferred to him, that he owned the same, and that unless complainants would take a lease from him, he would dispossess them. The complainants believed this representation to be true and relying upon it they accepted a lease of the premises from James Wilson, covenating to pay him rent therefor, which rent they did for a time pay. The complainants subsequently discovered that Julia Wilson had not transferred the leasehold estate to James Wilson, that the representation which the latter had made to them had been false, that he never had been the owner of the premises, and upon making this discovery they refused to pay him further rent. James Wilson thereupon instituted proceedings, under the landlord and tenant acts, before the justice of the peace, who is named as a defendant, to dispossess the plaintiffs, basing his right to maintain the proceeding on the lease which had been executed upon faith in his false representations. Julia Wilson, who still continued to be the real owner, conveyed the leasehold estate, by deed dated January 15, 1909, to Catharine Wilson (wife of Thomas), complainant. The plaintiffs, on January 18, 1909, filed this bill. If the allegations of this bill were true the complainants had not entered upon this land under James Wilson, they did not originally obtain possession through his acquiescence; they entered under Julia Wilson, who continued as the lawful owner of the leasehold estate, down until January 15, 1909, when she conveyed to Catharine Wilson. The representation of James Wilson, which induced the

plaintiffs to accept a lease from him after they had been in possession for over seven years, was false, and he never had been the owner of the leasehold estate. When a tenant, who has entered under the real owner, is induced to accept a lease from another, who is not the owner, by the false representation that the title has been transferred to him, it is certainly very clear that such a transaction is a fraud upon the tenant. When the pretended landlord attempts to use such a fraudulent lease as the foundation of a summary action to dispossess the rightful owner, under the landlord and tenant acts, equity will interpose to restrain by injunction the proceedings at law: Lowenstein v. Keller, 3 Kulp, 361; Denny v. Fronheiser, 207 Pa. 174; Kaufmann v. Liggett, 209 Pa. 87. The demurrer was properly overruled, and the first and second specifications of error are dismissed. The authorities above cited must be accepted as settling the question of the jurisdiction of equity to restrain actions at law in cases of this character, and all the specifications of error which attempt to raise that question are overruled.

The third specification of error is without merit, it is based upon the fact that the court made an order, on October 31, 1910, permitting two affidavits, which were indorsed "injunction affidavits," to be filed nunc pro tunc. These affidavits were not considered as evidence when the court came to the final disposition of the case; the parties who made the affidavits were called as witnesses at the hearing and fully cross-examined. If it be suggested that they were permitted to be filed as affidavits to support the order granting the preliminary injunction, the reply is that there were other injunction affidavits filed at the proper time fully sufficient to sustain that order. The respondents never moved to dissolve the preliminary injunction, nor appealed from the order awarding it, nor do they now assign that order for error. The defendants having permitted the preliminary injunction to stand, filed their answer and proceeded to a hearing which resulted in a final decree, the preliminary injunction was

superseded by that final decree, and it is now too late to raise any question as to whether the injunction affidavits were sufficient to support the preliminary order.

The specifications of error which relate to the admission of evidence violate Rule XVI of this court, which requires that the evidence admitted under an exception must be quoted in the specification of error, and those assignments are, for that reason, dismissed. We have, however, considered the testimony to which those specifications might have referred, and are satisfied that even if that testimony were left entirely out of the case, there would still remain sufficient testimony to sustain the findings of fact by the court below.

When this issue was finally made up the only fact in dispute was whether Julia Wilson had assigned this leasehold estate to James Wilson, the defendant. Julia Wilson was an old woman who could neither read nor write. There was no pretense that she had made an oral assignment of this lease; the defendant relied entirely upon an alleged assignment in writing, purporting to be executed by her by making her mark, in connection with her signature written by another. This alleged assignment purported to be attested by the signatures of two young boys (one of whom was the son of this defendant) who were called as witnesses. Each testified that they had taken the assignment of the lease to their grandmother, and that when one of them began to read it to her, she said that he need not read it, that she knew all about it, that one of them then wrote her name, with the words "her mark," and that she then took the pen and made a cross, for her mark. The testimony of one of these witnesses made it clearly evident that the old woman never had seen the paper before, for the paper had been then freshly written by a brother of that witness, who gave it to the witness, and the latter took it directly to the residence of Julia Wilson. Julia Wilson testified that when the boys brought the paper to her and asked her to execute it, she said to them "What is this about?" and their only reply was "Oh,

it is no harm to you; only just sign it; it is no bother; your name is wrote. Put your finger to this." She testified that she replied to this, "No, I will not put it. Tell me what this is about." When Julia Wilson thus testified, she had parted with all her interest in the property. The controversy as to the ownership was between her son and the wife of another son. Her testimony was corroborated by that of Maggie Cosgrove, who was present during the entire conversation, and seems to have been an altogether disinterested witness. There was thus squarely presented an issue of veracity, with two witnesses upon each side. The learned judge of the court below had the witnesses personally present before him, and was fully competent to judge of their credibility. He was warranted, in considering the circumstances surrounding the witnesses, at the time of the transaction, as testified to by them. The learned judge found, from this conflicting testimony, that Julia Wilson never did assign or transfer to James Wilson the leasehold estate in question. It being established by the bill and answer that the complainants went into possession of the premises as tenants of Julia Wilson and that they were induced to accept a lease from James Wilson upon his representation that Julia Wilson had transferred the leasehold estate to him, which representation they believed to be true; it follows that if Julia Wilson had not sold, assigned, or transferred the leasehold to James Wilson that the representation of James Wilson which induced the complainants to accept the lease was false, and the lease was vitiated by fraud. The court below having, upon sufficient testimony, found in favor of the complainants the one disputed fact essential to establish their right to the relief which they sought, we find nothing in the record which would warrant us in disturbing that finding.

The decree is affirmed and the appeal dismissed at cost of the appellants.