734

## Martin v. Droney.

*George T. Hambright* and *John E. Malone*, for rule.

*Charles W. Eaby*, contra.

GROFF, J., July 7, 1928.—This is an action in *assumpsit* against the surety on a lease to recover a balance alleged to be due by reason of the principal (lessee) holding over after the expiration of his lease.

On March 4, 1925, the plaintiff entered into a lease with one Patrick Droney, leasing him, "for the term of one year from the first day of April, A. D. 1925, and ending on the first day of April, 1926, . . . all that certain northern half of dwelling known as 132 S. Queen Street, Lancaster, Pa. First and second floors, with use of hall in common with other tenants."

The lease contains the following: "Either party may determine this lease, if an annual one or a term of years, at the expiration of the term herein created, by giving to the other three months' written notice of intention so to do, . . . but in default of such notice, this lease, with all the conditions and covenants thereof, shall continue for the additional term as herein provided, and so on from term to term. . . ."

The defendant, Patrick Droney, on March 4, 1925, signed the following, which was printed on the back of the lease:

"For value received, the undersigned hereby becomes surety to the Landlord or his assigns, for the true and faithful performance of the above contract, and every renewal thereof, on the part of the said tenant, without recourse to the said tenant being first required, and I do hereby waive the benefit of any and all exemption laws, on all executions issued to recover any judgment obtained against me in pursuance of the above contract."

The defendant, in his affidavit of defense, says as follows:

"6. The defendant admits that he executed the surety contract attached to plaintiff's 'Exhibit A,' but avers that the entire rent for the term covered by said lease of March 4, 1925, was paid to the plaintiff, and further avers that said lease of March 4, 1925, was never renewed. Defendant avers that he did not become surety for the payment of the rent reserved by the new lease entered into between the plaintiff and Patrick Droney during the latter part of March, 1926, for the term beginning April 1, 1926, and ending April 1, 1927."

It was also alleged as a matter of defense that Patrick Droney had entered into a new lease for the year 1926-1927. This defense was insisted upon on the trial of the case.

The court, in instructing the jury, said: "If there was a new lease entered into in March, 1926, and Tim Droney did not become surety on that lease, and Pat Droney continued to occupy the premises under that lease and not under this lease that Timothy Droney had signed, then, of course, your verdict here ought to be for the defendant."

The jury found a verdict in favor of the plaintiff for the sum of $30.

The defendant submitted a point for binding instructions and now moves for judgment *n. o. v.*

Defendant's contention is that the words "but in default of such notice (meaning the three months' notice), this lease, with all the conditions and covenants thereof, shall continue for the additional term as herein provided," without specifying the length of the additional term, were not sufficient to work such renewal as would bind the surety. The position taken by defendant seemed at first to have a great deal of force, but a careful consideration of the whole lease reduces the forcefulness of defendant's position.

In considering this case, we are not unmindful that a lease is always construed most strongly against the landlord. Justice Potter, in Kaufmann *v.* Liggett, 209 Pa. 87, says: "As a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself."

Judge Head, in Adams *v.* Dunn, 64 Pa. Superior Ct. 303, 307, says: "There is nothing in that case (Murtland *v.* English, 214 Pa. 325) to infringe upon the long-established doctrine that where a tenant, after the expiration of his term, holds over with the acquiescence of the landlord, the lease will be considered renewed for another term."

In Graham *v.* Dempsey, 169 Pa. 460, we quote the syllabus: "A tenant cannot escape liability for the rent of another term by giving notice that he is going out at the end of his year, and then not going."

And Justice Mitchell adds: "That actions speak louder than words is sound law as well as proverbial wisdom."

The defendant in his brief frankly admits that it has been repeatedly held by both the Supreme and Superior Courts that a provision similar to the provision contained in our present lease will make the tenant and the surety liable for an additional term if the clause is properly worded, and cites Gardiner *v.* Bair, 10 Pa. Superior Ct. 74; Lane *v.* Nelson, 167 Pa. 602; McNamee *v.* Cresson, 3 W. N. C. 450; Reading Trust Co. *v.* Jackson, 22 Pa. Superior Ct. 69; Platt *v.* Fisher, 59 Pa. Superior Ct. 114; and then adds: "In all of these cases and in all of the reported cases the clause upon which recovery was allowed provided either that in the event the tenant held over, it should be deemed to renew the lease for an additional period of one year or some definite term."

This is true as we find the cases. There is no question about the principal's liability for rent for the additional term he occupied the premises. But we must find something in the lease itself that continues the surety's liability for the additional term his principal occupied the premises.

This lease, unlike most leases, "doesn't provide" a renewal of one year or a definite term, but says "shall continue for the additional term as 'herein provided,' and so on. . . ."

What do the words "herein provided" mean? How have they been interpreted? The word "herein," as defined in Words and Phrases (1st series), page 3281, is as follows: "'Herein,' as used in legal phraseology, is a locative adverb and its meaning is to be determined by the context. It may refer to the section, the chapter or the entire enactment in which it is used; and this rule is applicable to the construction of a document as well as of the statute."

In Ex parte Helton, 93 S. W. Repr. 913, we find that the phrase "as herein provided," as used in a statute imposing a fine on the persons who shall hunt

without being in possession of a license "as herein provided," means that the hunter must have in his possession a hunting license issued in pursuance of the other provisions of the statute.

Reasoning from these two definitions, we find that the words "as herein provided," used in the lease in question, refer to the entire lease, which covers the period of one year, beginning April 1, 1925, and ending April 1, 1926, and we find that there is a term prescribed in the lease, to wit, one year beginning and ending as therein designated, and the words of the lease "shall continue for the additional term as herein provided" would be for the additional term of one year, that term having been provided in the first part of the lease.

We, therefore, conclude that the motion for judgment *n. o. v.* should be overruled, and that judgment should be entered for the amount of the verdict.

Motion overruled and judgment directed to be entered for the amount of the verdict, with interest and costs.

From George Ross Eshleman, Lancaster, Pa.