## Pittsburgh Allied Fabricators, Inc. *v.* Haber et al., Appellants.

Argued October 1, 1970. Before BELL, C. J., JONES, EAGEN, O'BRIEN and POMEROY, JJ.

*Homer W. King*, with him *Chris F. Gillotti*, and *King, Sabino & Gillotti*, for appellants.

*John A. Metz, Jr.*, with him *Harry Eisenfeld*, and *Metz, Cook, Hanna & Kelly*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, November 12, 1970:

On January 24, 1964, the appellants, Paul V. Haber and John H. Haber, as landlords, entered into a lease with the appellee, Pittsburgh Allied Fabricators, Inc., for space on the first floor of a building to be erected by the appellants. The lease was for a five-year period commencing May 1, 1964, at a rental of $310 per month. Included in the lease was the following language: "Tenant shall have the option to renew this Lease for an ad-

ditional period of five (5) years from May 1, 1969 at the same rental subject, however, to adjustment for increase in taxes, water, sewage, and/or maintenance costs and under all the other terms and conditions herein set forth, providing notice in writing by Registered or Certified mail of its intention to exercise the option is given on or before February 1, 1969."

On December 30, 1968, the landlords notified the tenant that if it wished to renew the lease for an additional five-year term, the rental would be $708.32 per month, which amount reflected the increases in taxes, sewage and cost of maintenance for the premises. The tenant rejected the landlord's figures, but notified the landlords that it did intend to exercise the option on the lease.

Meetings and discussions were held between the parties. The tenant refused to accept the landlords' figure of $708.32 and the landlords refused the tenant's offer of $357.82 per month. The landlords then advised that inasmuch as no new lease had been entered into between the parties, the tenancy would end as of April 30, 1969.

The tenant brought an action in equity seeking to enjoin the landlords from evicting it, to enforce specifically what they alleged to be an option, and further requesting the court to determine the proper increase in rent for the renewal period of five years.

By an adjudication dated July 29, 1969, the chancellor determined that a valid option for a five-year renewal of the lease existed, that such an option had been exercised by the tenant-appellee and that the rental for the renewal period was to be fixed at $371.88 per month.

Exceptions to the adjudication were filed by the landlords-appellants and following argument before the court en banc, were dismissed and a final decree entered. This appeal followed.

The appellants argue that the court erred in finding that the language in the lease created a valid option. Relying on the statement of Pennsylvania law contained in *McArthur v. Rosenbaum*, 85 F. Supp. 5 (W.D. Pa. 1949) : "A provision for extension or renewal, in order to be enforceable, must be definite and certain in its terms, particularly the terms with respect to the duration of the additional term and the amount of rent to be paid," appellants contend that a formula partially based on maintenance costs is so vague and uncertain that it is too indefinite to be enforceable.

We do not agree. This is a much more definite formula than that upheld in *Weaver v. Wood*, 9 Pa. 220 (1848), where we upheld an option to give a lease "at a fair rent." There, we explained that just as a jury could fix a value for quantum meruit in an action on an implied contract, so too could a "fair rent" be fixed. After all, when the lease was written both parties believed that they had made a valid option agreement.

The language we used in our decision in *Kaufmann v. Liggett*, 209 Pa. 87 (1904), where we upheld an option to renew at a rent to be determined by four arbitrators, seems particularly apposite. There, we wrote as follows: ". . . [W]e agree with the conclusion of the court below that the fixing of the rental value of the premises for the period in dispute in this case is not of the essence of the contract, but that the right of renewal constituted the substantial element in this portion of the agreement. . . . As a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself: Taylor's Landlord and Tenant, 9th ed. sec. 81. . . . But

that in cases of renewal leases, the weight of authority clearly favors the view that the tenant in such a case has a quasi proprietorship; a right, lacking merely a valuation. . . . Under the facts of the present case, the court has complete jurisdiction in equity to fix the amount of the rental to be paid by the lessees, during the extension of five years from April 1, 1903, and to enforce specific performance of the agreement providing for such extension."

The instant case is easily distinguishable from *Gilbert v. Price,* 18 Pa. Superior Ct. 359 (1901), upon which the appellants rely. That case dealt with an alleged option for renewal "at rental that may be agreed upon." The parties clearly intended that there would be no renewal unless both parties agreed to the new terms. In the instant case, on the other hand, the language used in the lease indicates that the parties believed that taxes, water, sewage and maintenance would be capable of computation, requiring no agreement. Since the rate of profit would not increase, it would then be a simple matter to compute the increased costs, add them to the $310 rent in effect for the first five-year term, and with mathematical certainty, arrive at the new rent figure.

Under these circumstances, with his task made easier by the specific formula contained in the option, the chancellor was correct in taking jurisdiction to fix the amount of rental to be paid by the tenant during the extension period.

Appellants also allege three errors in the chancellor's application of the formula. In arriving at its determination as to the rental amount for the renewal period, the court determined that the total increase for taxes, water, sewage and maintenance amounted to $2,-878.23. The court further determined that the appellee occupied 25.8% of the square footage of the building.

The court then computed that 25.8% of the total increase was $742.58 per year, or $61.88 per month and thereafter concluded that the rental for the extension period should be $310.00 plus $61.88, or a total of $371.88 per month.

Appellants first contend that the court used the wrong figures in finding the increase in taxes. They emphasize that when the lease was signed on January 24, 1964, the total amount of real estate taxes was $483.38 and that the court should have used this figure as the base for measuring the increase in taxes rather than using the figure for taxes after the building was completed and the property was reassessed on May 6, 1964, when the taxes were raised to $2,303.00. However, the taxes in effect in January, 1964, when there was no building in existence, have no relevance whatsoever. Surely the $310.00 rental was not based on an assumption that such taxes would continue.

Appellant next contends that the chancellor erred in not considering the 30% increase in material costs as well as the 100% increase in labor costs in computing the amount of maintenance costs, and in excluding evidence as to possible maintenance costs in the future. We cannot agree. Surely, as the court en banc explained, it would be an absurd result if we were to put the tenant at the mercy of the landlord, who could make grandiose plans for future improvements in the name of maintenance. The record indicates that almost all of the maintenance costs expended in the first five years were for labor. There was no figure representing the cost of materials which could logically be multiplied by 130% to represent an increase in materials. Consequently, we believe the chancellor was correct in refusing to admit evidence as to future maintenance costs and in refusing to consider the rise in material costs in determining the increase in maintenance costs.

Lastly, the appellants contend that the chancellor erred in attributing to the tenant a share of the increase based on the percentage of square-foot area which the tenant occupied rather than the percentage of total rental return which the tenant's obligations represented. The appellants emphasize that the appellee occupied the prime rental area on the ground floor of the building, paying a higher rent per square foot than the other tenants in the building. On this issue we must agree with the appellants.

It is standard commercial real estate practice to charge varying amounts of rent in the same building depending on the location of the leasehold in the building and other factors which distinguish one particular leasehold from another. Moreover, the assessment of real estate taxes, the increase of which caused the most substantial increase in rent under the renewal formula, is to a great extent based on the rental value of property. We think it only fair, therefore, that the appellee bear that share of the increased expenses represented by its portion of the total rent payments rather than the share represented by its portion of the total square feet. Since the appellants were not permitted to offer evidence on the percentage of the total rent return represented by the appellee's rent, we must remand for further hearing on this issue and recomputation of the total rental for the extension term of the lease.

Decree vacated and case remanded to court below for further proceedings consistent herewith. Each party to bear own costs.

Mr. Justice COHEN and Mr. Justice ROBERTS took no part in the consideration or decision of this case.