In the Matter of SCHNUR ENTERPRISES, INC., t/a Break Away Lounge, a/k/a Breakaway Lounge, Debtor.

Bankruptcy No. 84–707.
Motion No. 84–743.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 15, 1984.

Kenneth D. Perkins, Butler, Pa., for debtor.

Marilyn J. Horan, Butler, Pa., for lessor.

## MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

The matter presently before the Court is Lessor's Motion for Relief From Stay wherein it is alleged that Debtor's lease of commercial premises has expired as a result of Debtor's failure to timely and effectively exercise its option to renew the leasehold for an additional term.

In its motion, Lessor alleges as follows. Debtors entered into a lease dated April 1, 1978 for the lease of premises located at 250 New Castle Road, Butler, Pennsylvania for a term of six years. Lessor alleges that at the time of filing on March 30, 1984, Debtors were in possession of the subject real estate. However, the lease agreement expired by its terms on March 31, 1984. It is further alleged that pursuant to the terms of the lease agreement, parties entered into negotiations in connection with an additional leasehold period beyond the expiration of the lease; however, no mutually acceptable lease renewal was effected. Lessor alleges that Debtors have continued in possession beyond the March 31, 1984 expiration, and such action constitutes a wrongful holdover to the detriment of the Lessor. Accordingly, Lessor seeks relief from the automatic stay in order that it may commence ejectment proceedings in state court.

In its answer, Debtor denies that the lease agreement expired by its terms on March 31, 1984. Debtor further denies that a mutually agreeable lease renewal was not effected between the parties. It is averred that Lessor failed to bargain in good faith in violation of paragraph 12 of the Lease. It is further averred that Lessor proposed onerous terms in connection with the amount of rent due under the renewed lease in an attempt to force Debtor to purchase the subject property.

Based upon the testimony adduced at trial, the Court enters the following findings of fact.

On April 1, 1978 Schnur Enterprises, hereinafter "Debtor" entered into a lease agreement with Rue and Marianne Snider, hereinafter "Lessors" for the premises located on the bottom floor of 250 New Castle Road. The bar and restaurant had been operating at the aforementioned location

for approximately twenty years prior thereto. The rental for the initial three-year term was $450.00 per month plus a percentage of monthly utility bills and miscellaneous expenses.

Paragraph 12 of the lease provided as follows:

12. The Lessors agree that the Lessees shall have the option to renew this lease for a further period of three (3) years under the same terms and conditions as the original lease except that the rent shall be increased to Six Hundred Fifty ($650.00) Dollars per month. The Lessors agree that the Lessees may have a further option to renew the lease for another period of three (3) years at a rent to be agreed upon by the parties. The Lessees shall notify the Lessors in writing of their intention to exercise either of these options at least ninety (90) days before the existing term expires.

Debtors exercised the option to renew the second leasehold term, and paid the amount of $650.00 per month in accordance with the terms of paragraph 12 of the lease. In mid 1983, Domenic P. DeMatteis and Nicholas DiBiase purchased a controlling interest of the Debtor's stock from the previous president, Floyd L. Schnur. Mr. DeMatteis and Mr. DiBiase were named President and Secretary respectively. Soon thereafter, they commenced negotiations with Mr. Snider in an effort to finalize the new three-year lease. The Court is satisfied that Rue Snider, Lessor herein, was orally advised of Debtor's intent to renew the leasehold upon numerous occasions and in unequivocal terms. Mr. DeMatteis testified that in May, 1983, he first spoke with Mr. Snider. Mr. Snider assured him that he wanted Debtors to remain in possession of the premises. Subsequent thereto, Debtor expended the sum of $10,000 in connection with improvements to the leased premises.

Debtor failed to notify Lessor in writing of its intention to exercise its option to renew within ninety days prior to the expiration of the term, as required by Paragraph 12 of the lease. The ninety day notice period expired on December 31, 1983. By letter of January 3, 1984, Lessor advised Debtor that the rent for the new lease period commencing on April 1, 1984 and ending March 31, 1987 would be $1100.00 per month. Thereafter, by letter of January 21, 1984 Lessor advised Debtor that the purchase price of the subject property would be $295,000 with $30,000 down at 12% per annum. Lessor sought acceptance or rejection of the offer no later than January 27, 1984.

On February 8, 1984, attorney for the Debtor wrote to Lessor, expressing Debtor's wish to continue renting the premises for a term of five years to commence on March 1, 1984. The rental terms proposed by Debtor in connection therewith were as follows: $750.00 per month for the first year; $850.00 per month for the second year; and 8% increments for each year thereafter.

By letter of February 16, 1984, Lessor advised attorney for the Debtor as follows:

". . . Regarding the lease with Schnur Enterprises, Inc. we are willing to change our request to $975.00 per month. This would be for a three year lease beginning April 1, 1984. . . . This offer remains open until February 22, 1984; 4:30 p.m. Time is of the essence."

On February 17, 1984 Attorney for the Debtor advised Lessor that Debtor had rejected Lessor's offer to lease the premises at $975.00 per month for three years. However, Debtor reiterated its previous offer. On February 28, 1984 Attorney for the Debtor advised Lessor of its offer to sign a three-year lease with a monthly rental of $850.00 for the first year; $975.00 for the remaining two years; and an option to renew for an additional three year period at $975.00.

By letter of March 14, 1984, Attorney for the Lessor advised attorney for the Debtor that Mr. Snider was no longer interested in pursuing negotiations with Debtor for renewal of the lease. Attorney for the Lessor wrote as follows: "As the lease expires March 31, 1984, arrange to vacate the premises."

Sometime before the week of March 30, 1984 Attorney for the Debtor advised Lessor of its acceptance of the terms set forth in Lessor's letter of February 16, 1984. Debtor tendered a check in the amount of $975.00 for the month of April, 1984.

In its brief, Debtor argues that the provisions in Paragraph 12 of the lease providing for an option to renew with "rent to be agreed upon by the parties" is a valid and enforceable provision for its renewal. Debtor further argues that the Court may grant equitable relief to the Debtor where the Debtor initiated discussions with Lessor long before the notice period; made significant improvements to the leasehold interest; and continued to negotiate with the Debtor subsequent to the running of the notice period.

In its brief, Lessor argues that Debtor failed to unconditionally manifest its determination to exercise the option, and further failed to comply with the written provisions prior to the expiration of the option. Lessor asserts that no option existed beyond December 31, 1983; and there was no waiver of the option deadline by Lessor beyond the January 3, 1984 communication. Lessor also argues that should the Court determine equitable grounds to excuse Debtor's failure to timely exercise the option, the option itself is void and unenforceable for its vagueness, uncertainty and indefiniteness as to the rental amount.

■ The Court now turns to the case law governing the dispute at bar. It is well-settled that notice of intention to exercise an option must be given in accordance with the provisions of the contract. *Borough of Phoenixville v. Walters*, 184 Pa. 615, 39 A. 490 (1898). Moreover, time is always of the essence in an option contract. *New Eastwick Corporation v. Philadelphia Builders Eastwick Corporation*, 430 Pa. 46, 241 A.2d 766 (1968). However, technical compliance with contractual provisions can be waived by the conduct of the parties. As stated in *Warner Company v. MacMullen*, 381 Pa. 22, 112 A.2d 74 (1955):

> ... Even though the time fixed in an agreement for settlement is stated to be of the essence of the agreement, it may be extended by oral agreement or be waived by the conduct of the parties; and where the parties treat the agreement as in force after the expiration of time specified for settlement it becomes indefinite as to time and neither can terminate it without reasonable notice to the other.

■ In the case at bar, the Court is satisfied that Lessor continued to negotiate with Debtor in regard to the rental amount under the renewed lease term after the expiration of the notice period. Based upon the documents admitted into evidence and cited earlier the Court is satisfied that Lessor waived technical compliance with the notice requirements of Paragraph 12 by his conduct. His letter of January 3, 1984 containing the proposed rental figure of $975.00 per month was written to Debtor after the expiration of the notice period. The Court is also satisfied that Debtor's delay in accepting the $975.00 figure was caused by Lessor's failure to bargain in good faith prior thereto. The Court next examines Lessor's argument that the language of the option renders it unenforceable because of its uncertainty. It has been held that an option to give a lease "for a fair rent" is enforceable. *Weaver v. Wood*, 9 Pa. 220 (1848). On this subject, the Supreme Court of Pennsylvania has stated as follows:

> ...Just as a jury could fix a value for quantum meriut in an action in an implied contract, so to could a "fair rent" be fixed. After all, when the lease was written, both parties believed that they had made a valid option agreement. *Pittsburgh Allied Fabricators, Inc. v. Haber*, 440 Pa. 545, 271 A.2d 217 (1970).

■ Moreover, in construing the renewal provisions of a lease, the tenant and not the landlord is favored in the event of uncertainty. *Kaufmann v. Liggett*, 209 Pa. 87, 58 A. 129 (1904).

The case of *Pittsburgh Allied Fabricators, Inc. v. Haber, supra.* presents a factual situation similar to that at bar. There-

in, the lease provided for renewal at the same rental subject to adjustment for increase in taxes, maintenance and miscellaneous expenses. The lease required written notice of Lessee's intent to exercise the option by a date certain. Prior to the expiration of the notice period, lessor notified lessee that the monthly rental for the new term was in excess of $700., although the rental under the present term was approximately $300. Although lessee rejected lessor's figures, it notified lessor of its intent to renew. Lessee's counteroffer was unacceptable to lessor, whereupon lessor advised lessee that inasmuch as no new lease had been agreed upon, the tenancy would end upon expiration of the initial term. The Court cites with approval *Kaufman v. Liggett, supra.* and *Weaver v. Wood, supra.* in concluding that the Chancellor correctly took jurisdiction to fix the amount of rental to be paid by the tenant during the extension period.

■ This Court was faced with similar issues in *Matter of Opus One, Inc.*, 33 B.R. 190 (Bkrtcy.W.D.Pa.1983). The dispute therein involved lessee's exercise of its option to renew notwithstanding its failure to comply with the written notice requirement specified in the lease. The lease provided that the annual rent for the renewal period was to be adjusted annually in accordance with the Consumer Price Index. Lessor refused to provide lessee with the rental figure under the renewed lease despite lessee's repeated requests in an attempt to thwart lessee's exercise of its option to renew. Therein, renewal was permitted notwithstanding Debtor's technical noncompliance. The Court stated:

> Forfeiture in the case at bar would be manifestly unfair, particularly in light of (Lessor's) repeated refusal to supply information necessary for Opus One's exercise of its option. Any other result would allow (Lessor) to use Opus One's technical noncompliance as a means of extricating itself from a lease which is no longer profitable. p. 194.

In the case at bar, the Court is similarly satisfied that the Debtor's exercise of its

option to renew and acceptance of the terms embodied in Lessor's letter of January 3, 1984 are effective. Any other result would allow Lessor to defeat Debtor's option to renew by unilaterally proposing onerous terms with regard to the monthly rental due thereunder.

Based upon the foregoing, Lessor's Motion for Relief from Stay is denied.

An appropriate order will be entered.