# CHARLESTON.

### THE UNITED WOOLEN MILLS CO. *v.* R. W. HONAKER.

### Submitted March 5, 1924.    Decided April 1, 1924.

1. LANDLORD AND TENNANT.—*Lease Covenant for Renewal or Extension of Term Binding on Grantee of Reversion.*

   Under sec. 2, ch. 93, Barnes' Code, 1923, a covenant in a lease, providing for a renewal or extension of the term demised, is a covenant binding not only on the lessor but also on the grantee or alienee of the reversion. (p. 169).

2. SAME.—*Equity May Ascertain Fair Rental Value and Specifically Decree Extension of Lease Pursuant to Option.*

   Where the renewal clause of a lease provides that if at the expiration thereof the premises be for lease the lessee shall

have the privilege of renewing or extending the lease "provided it is willing to pay the same rental therefor as is offered by any other responsible person in good faith," but the lessor, though willing to lease the premises, fails to submit to the lessee any offers from responsible persons, equity upon proper application by the lessee therefor, will ascertain the fair rental value of the premises and will decree specifically the extension or renewal of the lease.  (p. 173).

McGINNIS, JUDGE, absent.

Appeal from Circuit Court, Mercer County.

Suit by the United Woolen Mills Company against R. W. Honaker.  From a decree for defendant, plaintiff appeals.

*Reversed.*

*McClaugherty & Richardson* and *Saunders, Crockett & Fox,* for appellant.

*French, Easley & Easley,* for appellee.

MEREDITH, PRESIDENT:

Plaintiff, United Woolen Mills Company, a corporation, seeks to enjoin an action of unlawful entry and detainer brought by R. W. Honaker to eject plaintiff from certain leased premises, and prays that defendant be compelled to extend and renew the lease on said premises, in accordance with the provisions of the contract of lease under which plaintiff held.  The circuit court overruled defendant's demurrer to the bill; dissolved the temporary injunction formerly awarded; reinstated the action at law instituted by defendant, the prosecution of which was restrained by the temporary injunction; and dismissed the suit.  The court in its decree also determined three matters of law and fact arising in the case as follows: (1) it fixed the fair rental value of the property at $400 per month; (2) it found that the defendant had the property for lease; and (3) it decided that the provision in the lease contract giving the plaintiff the option to renew or extend the lease at the expiration of the original term was not a covenant running with the land and was not binding on defendant.

The contract of lease in question was executed January 16, 1917.  By it C. S. Garrett and G. T. Thornhill, the then

owners of the property involved, leased the premises, a three story business building on the corner of Federal Street and Princeton Avenue in the city of Bluefield, to the plaintiff for a term of five years, beginning March 1, 1917. The rental for the first year was fixed at $175 per month, and for the four remaining years at $200 per month. There were various covenants relative to the liability for water and electricity, to the liability of the lessee for the payment of rent in case of fire, to the right to release and sublet, etc., and there was a special agreement as to the right of renewal as follows:

> "It is agreed between the parties hereto that at any time not less than six months nor more than nine months before the expiration of this lease, the parties hereto, if the above premises are then for lease, enter into an agreement for an extension or renewal of this lease for another five (5) years term and the lessee shall have the privilege of extending or renewing the same provided it is willing to pay the same rental therefor as offered by any other responsible person, firm or corporation in good faith."

Plaintiff entered under the lease and apparently performed all of its obligations thereunder satisfactorily both to Garrett and Thornhill, and to Honaker, who later purchased the leased property. It will be observed that the provisions of the renewal clause are that "at any time not less than six months nor more than nine months before the expiration of this lease" there should be certain arrangements made as to a renewal. The date of the expiration of the original term was February 28, 1922. The period for the renewal arrangement was therefore between June 1st and August 28th, 1921.

With these facts in mind, we may proceed to a consideration of plaintiff's contentions. It of course objects to the dissolution of the injunction and the reinstatement of the law action for the possession of the premises, but it urges specifically that the court erred; (1) in holding that the covenant of renewal was not such a covenant as to run with the land and therefore binding on defendant, the purchaser of the property, and therefore the assignee of the reversion;

and (2) in holding that the fair rental value of the building was $400 per month. Plaintiff concurs fully with the court's finding that the premises were for rent, a proposition which defendant strenuously denies.

We think there can be no doubt that the renewal clause of the lease was a covenant running with the land and therefore binding upon defendant. Section 2, chapter 93, Barnes' Code, 1923, decides that.   It reads:

> "A lessee, his personal representative or assigns, may have against a grantee or alienee of the reversion, or any part thereof, his heirs, or assigns, the like benefit of any condition, covenant, or promise in the lease, as he could have had against the lessors themselves, and their heirs and assigns; except the benefit of any warranty, in deed or law."

If there were otherwise any doubt about a covenant of renewal in a lease running with the land, the above statute settles the question, and the court clearly erred in holding otherwise in its decree.

Conceding, however, that the covenant is of such character as to bind defendant, the assignee of the reversion, two questions then arise. Did defendant hold the property out for lease after the expiration of the original term, thus entitling plaintiff to renew at the same rental offered by any other responsible person in good faith? If so, what should be the amount of the monthly rental for the extended or renewed term as shown by the facts of this case?

It is not contended that plaintiff had the right to renew unless the premises were for lease under the language of the contract, and the position that defendant takes is that he had never made up his mind to lease the property again as contemplated by the contract, and that he had thought very seriously about using the building for private business purposes. Plaintiff says the property was for rent, and since defendant secured no bona fide offers from responsible persons, its lease should be renewed at the rate provided for the original term, $200 per month. It will be recalled that the circuit court found that the premises were for rent, and that a fair rental was $400 per month.

We will consider these two findings in order. Were the premises for rent? The evidence as to this phase of the case consists chiefly of a number of letters exchanged between the president of plaintiff company, W. A. Hersch, and defendant; of testimony of certain business men of Bluefield who discussed renting the building from defendant at the expiration of plaintiff's lease; and of declarations of defendant relative to his intentions in the matter. Defendant's position on all of these circumstances is that while he did not make up his mind for a time during the three months period as to what he would do with the property, he never at any time during that period decided definitely that the property would be for rent, and in addition that on August 9th, 1921, he informed plaintiff by letter that the property would not be for rent. He admits that he discussed renting the property with Steve Georas and M. Mickel, also that he told Hersch on August 27th, 1921, that if he decided to lease the property he would be glad to figure with plaintiff. Defendant relies emphatically upon his contention that under the lease plaintiff could only insist upon a renewal in case the premises were "then for lease", that is, for lease at sometime between June 1st, and August 28th, 1921. It seems clear from the record that defendant's conversations with Mickel and Georas occurred during the fall of 1921 and first two months of 1922.

However, plaintiff was prompt in entering into negotiations for a renewal during the three months period provided in the lease. Hersch opened the correspondence by a letter dated June 4, 1921, in which he reminded defendant of the renewal clause of the lease, inquired as to the "present rental value of the property", and stated that he wished to consider the advisability of exercising the renewal option. Defendant replied on June 7th as follows:

> "Before naming a price on property in question, I would like to know whether you would like to lease all three floors, or only the lower floor, and what term of years you would want the agreement to read."

Hersch replied that he was "not particular as to which," but merely thought it well to start negotiations promptly.

On June 16th, defendant answered that he considered the fair rental value on the whole building to be $500; for the lower floor only, $400, and as to his willingness to rent the building said:

> "As far as I know now, the building will be for rent at the expiration of your lease, however, I have not fully decided as to this."

Hersch's reply to this letter was that he would thank defendant to ascertain what rental he could obtain from some responsible party, so that he, Hersch, could exercise or refuse to exercise the option according to its terms. Defendant on June 23rd merely replied that he saw no reason for haste, and that he would of course give plaintiff an opportunity to meet any offer he should receive.

So far as the record discloses, there was no further correspondence until August 9th, when defendant wrote the letter which he relies upon as notice to plaintiff that the premises would not be for rent. It reads:

> "This is to advise you that the building on corner Princeton Avenue, Federal Street which your company now occupies in this city, will not be for rent after the expiration of your lease.
>
> In case I should change my mind before your present term expires I will be glad to figure with you.
>
> Be glad to have you call to see me when in Bluefield."

Hersch, accompanied by Mr. Dermott, plaintiff's secretary and sales manager, called on defendant on August 27th. They demanded that the lease be renewed according to its terms, and Dermott says that defendant agreed to find out what the property was worth and to furnish them with an offer. Defendant testified as to this conversation: "I told them all practically the same thing—that I might decide to (rent), but I had not decided"; that if he did decide to rent the building he would submit his offers to plaintiff. Defendant says he at no time offered the premises for rent to any one, and insists that his letter of August 9th was a definite refusal to rent to plaintiff.

After the expiration of the three months period, there was

further correspondence between Hersch and defendant. Defendant appears to have received a letter dated November 4, 1921, from H. F. Day, a lawyer representing a client whose name was not disclosed, offering a rental of $500 per month for a ten year lease. Defendant forwarded this letter to Hersch. Day seems to have represented a Greek engaged in the restaurant business, who later concluded that his offer was too high and reduced it to $400. Plaintiff would have us infer that this offer was not a bona fide offer from a responsible person· The circumstances support such an inference to some extent. By way of compromise, defendant on March 10th, 1922, agreed to accept a rental of $450, but this offer was not accepted promptly by Hersch, and on April 6th, defendant again insisted upon a rental of $500. The result of it all was that the parties could not get together, and hence this suit. Defendant says that he never at any time offered the property for rent, not having made up his mind so to do. The court found that the property was for rent, and as this is purely a question of fact, we are bound to accord considerable respect to its finding. Perhaps, as a matter of original decision we would hold the same. Defendant's letters to plaintiff from June to August, 1921, do not carry conviction to a disinterested mind that the property was for rent, or that it was not for rent. Even the letter of August 9th, in which defendant stated that the building would not be for rent, included the statement that the writer might change his mind. Dermott testifies that on August 27th, defendant promised to ''furnish us with an offer by some prospective tenant as a base on what the rental would be for the next five years'', but defendant by testifying that he only said that he had not made up his mind in effect denied the promise. The thought occurs that all of these letters on the part of defendant may have been nothing more than part of a plan to secure the highest bid possible either from plaintiff or someone else. We do not know that this was the case, but it seems to us that plain justice required that plaintiff have either an express offer from defendant or an express refusal. We doubt that equivocation and delayed statement of his position by defendant was the sort

of action contemplated by the renewal clause of the lease. With all of the evidence which we have outlined before it, and more, the circuit court answered the question, and we will follow its holding that the premises were for lease.

But if for lease, for what rental? That is the third and last question which we are called upon to decide. The fair rental value at the time of the renewal say the defendant and the circuit court. At least, the circuit court fixed the rental value, so we assume that it held to defendant's view. The same rental as prescribed in the original lease, $200 per month, says the plaintiff now, though it asks in its bill that the court fix the fair rental.

Though cases in which this proposition has been raised seem to be rare, we believe defendant's position is supported by the equities of the case and respectable authority. Plaintiff argues that as defendant did not busy himself and secure a responsible offer for the lease, he must suffer for his delinquency and the old rental rate must govern the renewal. However, that contention does not appeal to a court of equity. As shown by his letter of June 4th, 1921, and other statements, Hersch believed that the lease contemplated a renewal based on "present rental value" at the date of renewal, and so do we now. Vol. II, Underhill, Landlord & Tenant, §805, treats the matter thus:

> "The expression 'what responsible parties will agree to give' when applied to renting business property means its highest rental value."

We find that the author of this text based the above language on the case of *Arnot* v. *Alexander,* 44 Mo. 25, 100 Am. Dec. 252, and while that decision seems to be practically the sole support of text book expressions on the proposition (See 24 Cyc. p. 992), we are so favorably impressed by its logic and reasoning that we are perfectly willing to adopt its principles so far as they are applicable. The renewal clause involved there read as follows:

> "If this lease shall not be terminated by forfeiture or any other cause before the expiration of the five years, then said lessee or his legal assigns shall be entitled to a renewal of the same for five years longer,

provided said parties can agree upon terms, or that said lessee is willing to give as much as any other responsible party will agree to give.''

The suit was, as here, to compel specific performance of the renewal covenant. The chief defense was that the covenant was too uncertain and indefinite to constitute the basis of a specific performance decree, but the court held:

''Equity will hear evidence, fix amount of rent, and decree specific performance, or hold the covenantor liable in damages for the breach of his covenant to renew a lease, providing that the amount of rent for the renewal is to be ascertained by what responsible parties would agree to pay for the use of the premises, as that fixes the rent with as much certainty as though it were to be determined by appraisers, and only means the highest market value of the premises at the time of renewal or valuation.''

We realize that such was seemingly not the view of the court in at least one other case, *Gelston et al.* v. *Sigmund,* 27 Md. 334, but it seems to us to be both equitable and within the spirit of the more recent cases relative to specific performance of contracts. This is shown by the trend of the decisions involving those leases in which the parties agree to leave to arbitration the rate of the renewal granted. There is a principle of long standing that equity will not compel parties specifically to perform an agreement to submit to arbitration, but in these renewal cases, Jones, Landlord & Tenant, §346, says:

''However, there seems to be a doctrine in the later cases that equity will, to prevent a failure of justice, apply its own remedies, and thus, where the substantial terms of a contract are agreed upon, arrive approximately at the minor details and then specifically enforce the contract. In the case of a covenant of this kind, it is obvious that it is not of the essence of the contract that the valuation should be made by appraisers rather than by a court of equity.''

And so in this case, it does not seem to us that it is material whether the rental value of the premises be fixed

by the offers of third parties or by the court. See accord on this general proposition, 24 Cyc. p. 1006. The only phase of the renewal lease not made certain by the express terms of the original contract can thus be rendered certain in a manner not abhorrent to the agreement of the parties. We are not disturbed, therefore, by our recent decision of *Salem Lodge* v. *Smith,* 94 W. Va. 718, 120 S. E. 895, holding that a vague and uncertain renewal clause was an insufficient defense to the lessor's action of unlawful entry and detainer. From a fair consideration of all the evidence in the record as to the rental value of the premises, the court fixed the same at $400 per month. We affirm that finding.

We do not need to decide whether defendant shall be required to "renew" the lease or to "extend" it. The renewal clause here calls for both, and plaintiff asks that defendant be required to do both. In *Whalen* v. *Manley,* 68 W. Va. 328, 69 S. E. 843, we expressed our opinion that a "renewal" contemplates the execution of a new lease, but as the "extension" answers all requirements of this case, and as the original lease answers the purpose sufficiently (See Vol. II, Underhill, Landlord & Tenant, sec. 803) our decree will not require the execution of a new agreement.

We reverse the decree of the circuit court insofar as it holds the covenant of renewal not binding on defendant and dissolves the injunction; but affirm its findings as to the rental value of the property and that the premises were for rent. Our decree, therefore, is to award plaintiff an extension of his lease for a term of 5 years from February 28, 1922, at a rental of $400 per month, all other terms and conditions of the tenancy to be in accordance with the provisions of the original lease contract, except that there shall be no further right of extension or renewal. The injunction will be reinstated. The tender made by plaintiff being insufficient, the monthly rentals heretofore accrued will bear interest from their due date until paid.

*Reversed.*