[Civ. No. 5220. Second Appellate District, Division Two.—October 13, 1927.]

W. W. GLENN, Appellant, v. HENRY BACON, Respondent.

Porter C. Blackburn for Appellant.

Clarence A. Jones for Respondent.

COLLIER, J., *pro tem.*—This is an action in unlawful detainer. On July 2, 1923, appellant and respondent entered into a written contract, drawn by appellant, wherein W. W. Glenn leased to Henry Bacon certain premises in the city of Los Angeles in the following words: " . . . said party of the first part do hereby lease, demise and let, unto said party of the second part (certain premises, describing them) for the term of one year, *with option of four more years* commencing on the 19th day of July, 1923, and ending on the 18th day of July, 1924 (which clause is hereafter referred to as Clause 1) . . . (Here follows considerable matter extraneous to the issues presented herein.) It is expressly agreed and understood that the said lease shall run *at the option of the parties hereto* for five years from date hereof (which clause we shall hereafter refer to as Clause 2), the rental *for the first two years and six months* shall be forty-five dollars per month, after which the rental shall be rated in accordance to the condition of the rents in that community. . . . That said W. W. Glenn agrees *after the first year* to have constructed in said house a bath tub and fixtures at his own expense. . . . And that, at the expiration of said term . . . the party of the second part (Bacon) will quit and surrender. . . . And if said party of the second part shall hold over the said term . . . such holding shall be construed to be a tenancy only from month to month . . . " (Italics ours.)

Before the expiration of the first year Bacon gave Glenn notice that he, Bacon, elected to exercise his option to continue the lease for the period of four years more. On August 15, 1924, Glenn notified Bacon that he, Glenn, would not permit said Bacon to occupy said premises after September 18, 1924, and demanded the possession thereof. On October 30, 1924, Glenn served on Bacon a demand for possession, alleging, among other things, that "your tenancy at said premises has been legally and rightfully terminated

heretofore"—evidently referring to said notice of August 13, 1924.

Plaintiff raises two contentions:

1st: That the lease by its terms has expired. Defendant denies the expiration of the lease and contends that it had and has four years to run after July 18, 1924.

2d: During the trial the court overruled plaintiff's objections and permitted evidence to be introduced to show the intentions of the parties at the time of and in the execution of the lease. This action of the court is assigned as error in that it is claimed that the evidence tended to vary the terms of a written instrument and was not responsive to any issues pleaded.

These are the only points in the case.

The trial court found and adjudged that by error of the scrivener of the lease the words, "It is expressly agreed and understood that the said lease shall run at the option of the parties," were used instead of "at the option of the party of the second part," and that it was intended by the lessor and lessee that said option for a further term of four years should, *by the terms of the lease,* be given to Bacon, and that the plaintiff was entitled to no relief. From said judgment and rulings plaintiff appeals.

Let us first consider Clause 1: " . . . said party of the first part do hereby lease, demise and let, unto said party of the second part (certain premises, describing them) for the term of one year, with option of four more years commencing on the 19th day of July, 1923, and ending on the 18th day of July, 1924." Had the lease stopped there no question would have arisen but that the option was to be exercised by Bacon only. (35 C. J. 1012, sec. 130 [2] [a]; *Sheppard* v. *Rosenkrans,* 109 Wis. 58 [83 Am. St. Rep. 886; 85 N. W. 199]; *Rogers* v. *National etc. Co.,* 23 Ont. Law Rep. 234; *Boston Clothing Co.* v. *Solberg,* 28 Wash. 262, [68 Pac. 715]; *Gates* v. *W. B. Hutchinson Inv. Co.,* 88 Wash. 522 [153 Pac. 322, 324].) We quote from the opinion in the Rogers case, *supra:*

"Mitchell, the owner in fee of the property in question, entered into an agreement with one Pearce to let the same to Pearce for five years from the 1st September, 1905, to be used as a drug-store and dwelling. The agreement sets out certain terms, and finishes thus: 'And the lessor fur-

ther agrees with the said lessee that he will at the end of the term of five years give the said lessee the option of a further term of five years and the lessor further agrees that in case of sale he will give the said lessee the first option to purchase.' Pearce accepted this, and entered into possession. In July, 1907, Mitchell sold and conveyed the property to the plaintiff; before doing so, however, he offered the land to Pearce, but Pearce refused to buy. Pearce, in August, 1907, assigned all his interest in the agreement to one Smuck; and he, in October, 1908, assigned all his interest in the property to the defendants, who entered and paid rent to the plaintiff until the end of August, 1910. On the last day of August, 1910, the defendants wrote the plaintiff: 'We hereby give you notice that we accept the lease for a further term of five (5) years, as provided in the said lease.' On the 1st September, 1910, the plaintiff demanded possession, which was refused. Action was brought on the 18th October, 1910, and the case came on for argument upon the admitted facts.

"The interpretation and legal effect of the last clause is the crux of the case. I think it clear that what is meant is: (1) that, upon sale by Mitchell, the lessee, Pearce, was to have the first chance to buy—this was done, and nothing turns upon that provision; (2) the lessee was, at the end of the period, to have an option of a renewal of the lease for five yers longer. 'Option' is used here, I think, with a somewhat different connotation from that of its previous use—and I read the clause as though it said 'give the said lessee a renewal of this lease for a further term of five years at his option.' It was argued that all that was meant was, that the lessee should have an opportunity of making arrangements with the lessor for a new lease for five years, upon terms which would be satisfactory to both; but that, it seems to me, is not what the parties meant. If, then, the clause contained an 'option' for a renewal for five years, it is clear that the lessee had a right to a term of five years, beginning at the end of the previous term, and upon the same terms with the exception of the right to renew." (Affirmed in 24 Ont. Law Rep. 486.)

Whatever uncertainty there is in the instant case comes from Clause 2, which, as we have seen, follows Clause 1, but with other matter intervening the two clauses. Clause 2

provides: "It is expressly agreed and understood that said lease shall run at *the option of the parties* hereto for five years from date hereof." The uncertainty occurs from the use of the words "at the option of the parties," which is interpreted by the appellant to mean that the additional term should only become effective upon the *joint* agreement of Glenn and Bacon. Appellant cites the following language from 35 C. J. 1012: "It is of course permissible to provide by contract that the lessor shall be given the privilege to extend or renew the lease, in which event he cannot be required to do so." Unless otherwise limited by contract, the landlord always had and has that right. To so state in the contract gives no additional right to him. This is apparent from the following decisions.

In the case of *Gray* v. *Maier, etc.*, 2 Cal. App. 653 [84 Pac. 280], the court was considering a clause that at the expiration of the lease the party of the *first part* (the lessor) should have the privilege of leasing said premises for a further term of one year. The court said, at page 656 et seq.: "*A most casual reading of the lease* will demonstrate that an error was made in the designation of the parties to whom the option was granted. Reading the lease literally, it sought to confer an optional right upon the first party (the lessor) which she possessed under all circumstances; *one needs no optional or other contract right to confer the privilege to grant a lease of his own.* In addition, the right 'to lease' by the ordinarily accepted meaning of terms is unto the lessee. The owner or first party grants the lease, lets or demises the leased premises and it is second party who leases. These considerations would lead anyone examining the lease to see at once that the intention was to grant an optional right to the second party, and that the word 'first' was an error of the scrivener. . . . That an option to lease for another year was the subject of the contract is evident; that to give such option to the first party would be meaningless. To give it effect as a contract, therefore, it would necessarily follow that the intention was to give the option to the party who alone could be affected in his status with relation to the property by such option. 'It is not the practice of courts of justice to devest persons of their estates . . . by a strict interpretation of the language of an instrument, when the sense in

which the words were used is apparent from other portions of the instrument, viewed in the light of attending facts. To ascertain the real intention of the parties, we view the whole contract and all of its provisions, together with the relations of the parties toward each other . . . and effect will be given to the intent thus ascertained, *however clumsily the instrument may be worded'* (*Sprague* v. *Edwards,* 48 Cal. 249), 'and will be so read in an action at law, *and resort need not be had to a court of equity for reformation.'* " (Italics ours.)

Supplementing the language of our own appellate court above quoted is the very apt wording of Owen, J., in *Nelson* v. *Nelson,* 168 Wis. 115 [169 N. W. 278]:

"The plaintiff contends that from February 10, 1916, to February 10, 1917, defendants were tenants from year to year, under the statute, resulting from a holding over after their term under the lease had expired. The defendants claim that they were holding over under the lease. The character of their possession, as to whether they were tenants holding over under the statute or tenants under the lease is the principal question to be considered. This involves, first, a construction of the marginal clause appearing on the lease in the following words: 'It is further agreed and made a part of this contract that at the option of the party of the first part or the party of the second part this lease can be extended for one (1) year and at the end of each year leased for a period of five years from the date of this lease.' The plaintiff contends that this option is meaningless and void, because it gives the same option to either party and the exercise of the option by one party automatically destroys the option accorded to the other. The word 'option' is defined by lexicographers as the right, power or liberty of choosing; liberty to elect between alternatives; election; choice; preference. *It is apparent that, if the word 'option' is to be accorded its literal meaning, the exercise of the option by either party, either to continue or not to continue the lease for a further period, would nullify the exercise of a contrary option on the part of the other. It is obvious that both parties cannot exercise the option unless they both exercise it in the same way.* If the lessee desires to continue the lease, and the lessor desires to discontinue it, both options cannot be

exercised. One must give way to the other. This makes it very apparent that the word 'option,' in the marginal clause, was not used by the parties in its literal sense. That clause, manifestly, was inserted for a purpose. To accord to the term 'option' as therein used, *its literal meaning would be to construe the acts of the parties in inserting it, as purposeless,* and would be an abandonment of all effort to ascertain and to give effect to the intention of the parties.

"It is fundamental that in construing contracts the intention of the parties should be ascertained and enforced. We have little doubt that this marginal note was inserted for the purpose of giving to *either party* the right or privilege of continuing the lease as therein provided. A provision in a lease according to one or both of the parties a right of continuing the same is not at all unusual. This, it seems clear to us, is the thought that the parties to this lease had in mind, and it was to accomplish this purpose that the clause was inserted. We so construe it." (Italics ours.)

In the instant case we are of the opinion that to accord to the term "option," as used in Clause 2, the meaning as claimed for it by appellant, would be to construe the acts of the parties in inserting it as purposeless, and would be an abandonment of all effort to ascertain and to give effect to the intention of the parties.

The case of *Stetler* v. *North Branch Transit Co.,* 258 Pa. 299 [101 Atl. 980], is instructive, not only with reference to Clause 2, but also to Clause 1. In its opinion the court says:

"The lease contemplated the use and improvement of the land as a place of entertainment and amusement for the public, and it contained the following clause: 'It is further agreed and understood that if at the expiration of this lease the party of the second part, its successors and assigns shall desire to re-lease the said premises for a further period of ten years it or they shall have the first privilege of re-leasing the same at the rental and upon the terms herein contained.' The controversy turns upon the construction to be given to the words 'first privilege' in the above clause. Counsel for plaintiff contends the words mean that at the end of the ten-year term, the lessee has

nothing more than the first right to re-lease the premises for another term, provided the lessor was willing at that time to lease to anyone. . . . But as the court below well says: 'If the plaintiff's theory as to the meaning of the paragraph is to be accepted, it would, so far as the lessee is concerned, become wholly meaningless, and might as well have been omitted.'

"We are not to suppose that the parties intended such a result. An inspection of the clause shows that if the word 'first' had not been used in connection with the word 'privilege,' the right of the lessee to a renewal could not be questioned. Did the privilege of renewal then become any the less a privilege by being termed a 'first' privilege? The expression is awkward and perplexing, but we think it is more consistent with the expressed purpose of the lease to hold that the renewal was dependent upon the desire of the lessee, and that the expression of that desire was to give to it the first privilege of re-leasing, that is, priority of privilege over anyone else. The thought was not well expressed, but we feel that the words 'first privilege' in this connection should not be so construed as to nullify a valuable right in the hands of the lessee, which, under the paragraph as a whole, was evidently intended to be created. *It was of no possible use to make provision merely that one party should enjoy a certain right, if the other party should consent thereto*. The settled rule of construction is that any uncertainty as to the meaning of a clause in a lease is to be determined in favor of the lessee.'' (Italics ours.)

See, also, the case of *Pause* v. *City of Atlanta,* 98 Ga. 105 [58 Am. St. Rep. 290, 26 S. E. 489, 493], where it is said:

"Nor was it competent upon the part of the leaseholder to prove that she had an option upon the premises for a term of years longer than three, it appearing that the option was not to be exercised at her will alone, but was dependent likewise upon the concurrence of the landlord. Such testimony would be irrelevant, as, under the peculiar terms of the option claimed in the present case, the leaseholder acquired no interest, but only a privilege of making a new contract with her landlord at the termination of her lease, the new contract being dependent upon the consent of the landlord; *and this she would have had the right to*

*have done with or without the alleged option.''* (Italics ours.) (See, also, *Winston etc. Co.* v. *Union Guano Co.,* 162 N. C. 87 [77 S. E. 1106].)

Mr. Tiffany, in his work on Landlord and Tenant, has this to say: "An 'option' in the lessee to renew on such terms as may be satisfactory to both parties is obviously nugatory, it giving him merely the right to enter into a new contract with the owner of the reversion, which right he would have had without any such privilege." (2 Tiffany on Landlord and Tenant, 1521.)

We therefore conclude that Clause 2, "that said lease shall run at the option of the parties for five years," is nugatory and "meaningless" in so far as it attempts to confer any rights upon the appellant, Glenn, to nullify the option previously given to respondent, Bacon, in Clause 1.

Appellant relies on the case of *Gardella* v. *Greenburg,* 242 Mass. 415 [26 A. L. R. 1411, 136 N. E. 106], and which is the sole authority for the quotation from Corpus Juris, also relied upon by appellant and set forth *supra.* In that case the clause involved was as follows: "It is agreed that six months' written notice before the termination of this lease shall be given by either of said parties to the other in event that either of said parties desire[s] a renewal of said lease, and *failure to give said notice shall be regarded as an intention on the part of the parties failing to give the same that said lease shall not be renewed.''* Construing that clause the court said: "A desire to have a lease is not equivalent to a right thereto. Not only is provision made for the manifestation of this wish, but it is declared with equal definiteness that the failure to give notice shall be 'regarded as an intention' that the lease shall not be renewed. The negative intent manifested by failure to give notice is on an equal footing with the desire declared by giving one. One provision is as strong as the other. Construing them together, we think that the true interpretation of the covenant is that it furnished a timely means of information whether the parties were willing to execute another lease on the same terms. *There are no words indicating a right in the lessor to bind the lessee beyond the expiration of the term, or to obligate the lessor in like manner.* The covenant did not create an absolute and unqualified right in either." (Italics ours.)

Now compare the foregoing with *Burgener* v. *O'Halloran,* 111 Misc. Rep. 203 [181 N. Y. Supp. 235], where the court was construing the following clause in a lease: "That the said tenant shall notify the said landlord one month before the expiration of the term, if he desires to renew the lease." The court said: "The appellants contend that, lacking, as it does, the words 'covenant,' 'grant,' 'option,' 'refusal,' or 'privilege,' the clause in question is a mere statement that the tenant shall notify the landlord 30 days in advance, if he wants to remain in the premises, and they claim that it is elementary law that 'a landlord is not bound to renew a lease without an express covenant to do so,' citing McAdam on Landlord and Tenant (2d Ed.), p. 254. This same authority, however, says that no particular form of words is necessary to constitute a covenant for renewal, and the general rule for the construction of leases is that they *must be construed most favorably to the lessee, and this especially when the clause to be construed is claimed to be one destroying or defeating the estate of the lessee.* . . . The lease in question is upon a printed form known as the 'Gilsey Form.' It is partly printed and partly typewritten; it contains a number of mutual covenants, some 13 in all, and the words under construction by us appear to have been specially incorporated into the lease, in typewriting, in a blank space between the seventh and eighth paragraphs of the lease in question. The clause immediately follows the covenant on the part of the tenant, wherein he agrees to allow the landlords permission to show the premises to persons wishing to hire or purchase the same, and wherein the tenant further agrees that on or before the 1st of September, 1919, the landlords or their agent shall have the right to put up signs 'To Let' or 'For Sale' upon the property. Then follows the clause under discussion.

"As I look upon this proposition, the pertinent and cardinal questions to be asked here are: What is the meaning of the clause in question? and why was it thus put in the agreement under consideration? If it does not mean that this tenant was to have the option of the renewal of the lease for one year, upon his giving one month's notice, what does it mean, and why was such a clause put into the lease at all? If it is to be given the construction claimed for

it by the appellants, then the phraseology is absolutely meaningless. And my deduction is that, taking into consideration the situation of the parties, their relationship to each other, and other outstanding features of this controversy, and applying the well-known canons of construction to contracts of this nature, it clearly can be held that the tenant is given the privilege of a renewal of this lease for one year upon his giving the landlords 30 days' notice. Any other construction would be repugnant to common sense. There are many cases in the books, but none that I can find with the precise phraseology of this case; the decisions of the court, however, as I read them, are to the effect that, whatever ambiguity there may be in the words of the covenant, the intention of the parties absolutely must prevail, and this, even though the intention of the parties is in opposition to the strict letter of the contract, when such intention is clearly ascertained. As courts have said in construing certain of these covenants, more apt language might have been used; but the intent is clear and must prevail. (Citing cases.) . . . The present lease was prepared by the landlords, and was tendered to the tenant, and hence, under all known principles of construction, it must be construed, if its meaning is doubtful, most strongly against the landlords. A clause capable of two different interpretations should be construed in a sense which will have some operation. *An instrument should be construed most strongly against the party who drew it, and should be given the meaning he ought reasonably have understood that the person to whom he delivered the instrument should put upon it.* (Citing cases.)'' (Italics ours.)

We prefer to follow the reasoning of the Burgener case, particularly with reference to the interpretation of the word ''desire.'' We do not think the Gardella case is controlling, not only because the language of its clause is so entirely different from that in the instant lease, but because the question of *intent* in the Gardella lease was clearly defined, as the court in that case said: ''Not only is provision made for the manifestation of this wish, but it is declared with equal definiteness that the failure to give notice shall be 'regarded as an intention' that the lease shall not be renewed. The negative *intent* manifested by failure to give

notice is on the equal footing with the desire declared by giving one.'' (Page 106.)

■ At this point it may also be well to consider the whole sentence in which Clause 2 occurs. It is worded as follows: ''It is expressly agreed and understood that the said lease shall run at the option of the parties hereto for five years from the date hereof, the rental for the first two years and six months shall be forty-five dollars per month, after which the rental shall be rated in accordance to the condition of the rents in that community, if rents are advanced in said community then rents on said building shall be advanced, if lower, then the rents on said building shall be diminished; all of which shall be decided between the parties hereto.''

It might seem that the final phrase ''all of which shall be decided between the parties hereto'' would tend to support the previous phrase, ''it is expressly agreed and understood that said lease shall run at the option *of the parties* hereto for five years from date hereof,'' but we think not. On the contrary, we are of the opinion that said final phrase refers only to fixing the rental rate—that is to say, whether it was to be raised or lowered or remain the same. It may further be argued that if the parties could not agree upon the rental rate for the the last two and a half years the lease would terminate. This is not true, and has been so decided in various cases where the fixing of the rental rates has been left to the parties or to arbitrators or to appraisers. It has been held that such an appraisal provision is neither indefinite nor uncertain. See *Nakdimen* v. *Atkinson etc. Co.*, 149 Ark. 448 [233 S. W. 694, 697], where the court was considering the following clause: ''It is mutually agreed that at the expiration of said period of ten years, the rental to be paid by the party of the first part to the party of the second part for the concession and privilege herein granted, as herein set out, shall be fixed by a board of arbitrators, three in number, one to be named by each of the parties hereto, and the third to be selected by the two so named by the parties hereto, and that the award of any two of said arbitrators shall be final and conclusive upon the parties hereto.'' The court said: ''In the present case, the essence of the contract was the renewal of the lease for another term of ten years, and the fixing of the rental for

that period was merely ancillary to the main contract. Where the provision for an appraisal is incidental and subsidiary to the substantive part of the agreement, the party refusing to name an appraiser or arbitrator cannot be heard to complain where the court performs or provides for the performance of such service. The court, in fixing the reasonable rental value, treats the method as a matter of form, rather than substance. So it may be said in the present case that the clause of the contract providing for a board of arbitrations to fix the rental value of the premises does not render the contract void as being too indefinite to be enforceable.''

In the case of *United Woolen Mills Co.* v. *Honaker*, 96 W. Va. 166 [122 S. E. 440], the court had before it the following clause: ''It is agreed between the parties hereto, that at any time, not less than six months nor more than nine months before the expiration of this lease, the parties hereto, if the above premises are then for lease, enter into an agreement for an extension or renewal of this lease for another five (5) years' term, and the lessee shall have the privilege of extending or renewing the same, provided it is willing to pay the same rental therefor as offered by any other responsible person, firm, or corporation in good faith.'' In its opinion the court uses the following language: ''Volume 2, Underhill, Landlord & Tenant, sec. 805, treats the matter thus: 'The expression ''what responsible parties will agree to give,'' when applied to renting business property, means its highest rental value.' We find that the author of this text based the above language on the case of *Arnot* v. *Alexander*, 44 Mo. 25 [100 Am. Dec. 252], and, while that decision seems to be practically the sole support of the text-book expressions on the proposition (see 24 Cyc., p. 992), we are so favorably impressed by its logic and reasoning that we are perfectly willing to adopt its principles, so far as they are applicable. The renewal clause involved there reads as follows: 'If this lease shall not be terminated by forfeiture, or any other cause, before the expiration of the five years, then said lessee or his legal assigns shall be entitled to a renewal of the same for five years longer, provided said parties can agree upon terms, or that said lessee is willing to give as much as any other responsible party will agree to give.'

"The suit was, as here, to compel specific performance of the renewal covenant. The chief defense was that the covenant was too uncertain and indefinite to constitute the basis of a specific performance decree, but the court held: 'Equity will hear evidence, fix amount of rent, and decree specific performance, or hold the covenantor liable in damages for the breach of his covenant to renew a lease, providing that the amount of rent for the renewal is to be ascertained by what responsible parties would agree to pay for the use of the premises, as that fixes the rent with as much certainty as though it were to be determined by appraisers, and only means the highest market value of the premises at the time of renewal or valuation.' . . . There is a principle of long standing that equity will not compel parties, specifically, to perform an agreement to submit to arbitration, but, in these renewal cases, Jones, Landlord & Tenant, sec. 346, says: 'However, there seems to be a doctrine, in the later cases, that equity will to prevent a failure of justice, apply its own remedies, and thus, where the substantial terms of a contract are agreed upon, arrive approximately at the minor details and then specifically enforce the contract. In the case of a covenant of this kind, it is obvious that it is not of the essence of the contract that the valuation should be made by appraisers rather than by a court of equity.' And so, in this case, it does not seem to us that it is material whether the rental value of the premises be fixed by the offers of third parties or by the court. See accord on this general proposition, 24 Cyc., p. 1006. The only phase of the renewal lease not made certain by the express terms of the original contract can thus be rendered certain in a manner not abhorrent to the agreement of the parties."

Many phases of this question have been passed upon by the courts. In the two cases cited, and in the following decisions, there was a failure to agree in some respects and the courts stepped in, took evidence and fixed the rental rates. We have classified the cases as follows:

Where one party refused to arbitrate: *Atkinson etc. Co.* v. *Nakdimen,* 157 Ark. 403 [248 S. W. 561]; *Strohmaier* v. *Zeppenfeld,* 3 Mo. App. 429; *North Coast etc. Co.* v. *Kraft Co.,* 63 Wash. 250 [115 Pac. 97]. Where the arbitrators failed to agree and also failed to appoint a third

person: *Tobey Furniture Co.* v. *Lowe*, 18 Ill. App. 293; *Grosvenor* v. *Flint*, 21 R. I. 21 [37 Atl. 304]; *Lehigh etc. Co.* v. *Andrus*, 91 N. J. Eq. 225 [109 Atl. 746]. Where the parties failed to agree on arbitrators: 1 Paige, 412. Where the arbitrators failed to agree on the rental rate or value of the property upon which the rental rate was to be based: *Van Buren* v. *Wotherspoon*, 12 App. Div. 421 [42 N. Y. Supp. 404]; *Lehigh etc. Co.* v. *Andrus*, 92 N. J. Eq. 238 [112 Atl. 307]; *Kaufmann* v. *Liggett*, 209 Pa. 87 [103 Am. St. Rep. 988, 67 L. R. A. 353, 58 Atl. 129]. Where the appraisers disagreed and failed to appoint a third: *Springer* v. *Borden*, 210 Ill. 518 [71 N. E. 345]. Where one appraiser died: *Weier* v. *Barker*, 104 App. Div. 112 [93 N. Y. Supp. 732]. Where the appraisers failed to agree and one party refused to appoint new appraisers: *Lowe* v. *Brown*, 22 Ohio St. 463.

Furthermore, if there be any doubt about the meaning of the two clauses in the instant case—if there be any ambiguity or uncertainty—that ambiguity or uncertainty must be resolved in favor of the lessee, the lessor being the scrivener. (Sec. 1654, Civ. Code.) This rule has long been enforced in grants and leases. One of the earliest pronouncements is contained in *Dann* v. *Spurrier*, 3 Bos. & P. 403 [127 Eng. Rep. 220]: "Much is to be found in the books relative to the construction of deeds which contain covenants in the alternative; from all of which the rule appears to be perfectly clear, that if a doubt arise as to the construction of a lease between lessor and lessee, *the lease must be construed most beneficially for the latter.*" (Italics ours.) This rule was followed by our appellate court, and concurred in by the supreme court, in *Butt* v. *Maier etc. Brewery*, 6 Cal. App. 581 [92 Pac. 652]. The court was there construing the following clause in a lease: "At the expiration of this lease the said second party *shall have the prior right to lease the same,* said premises, for a further term of five years, for the rental sum of $3,000 for the full term, payable at the rate of $50.00 per month on the first of each and every month of said term. Provided, however, that if the said second party shall avail itself of that privilege, that then and in that event the said first party shall not be required to pay for any improvements at the

end of said second term of five years, but that then, at the option of said first party, the said premises shall be surrendered to her with all improvements thereon.'' With reference thereto the court said: ''The word 'prior,' as used in Clause 2, does not qualify the right of renewal. The right given the lessee to lease for a further term of five years must necessarily be prior to the right of other parties to lease the property. As we construe the lease, it was optional with the lessee whether it made any improvements or erected any buildings upon the leased premises, or elected to renew the lease for a further term. If it erected buildings and the lessor exercised its option to demand the surrender of the leased property and offered to pay the value of such buildings, it was optional with the lessee to assent thereto, thus waiving its right to renewal, but there was no legal obligation so to do. Thus construed, there is no ambiguity in the provisions of the lease. If, however, *it be conceded that the lease is conflicting in its terms, or uncertain in meaning, then under the provisions of section 1654, Civil Code, it 'should be interpreted most strongly against the party who caused the uncertainty to exist.'* 'The promisor is presumed to be such party.' In this case, the lessor is the promisor. (Citing cases.)'' (Italics ours.)

Hence, any ''conflicting terms'' in the instant lease should be construed most strongly against Glenn, the appellant. As the supreme court of Pennsylvania has well said in *Kaufmann* v. *Liggett,* 209 Pa. 87 [103 Am. St. Rep. 988, 67 L. R. A. 353, 58 Atl. 129, 132]: ''As a general rule, in construing provisions of a lease relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself.'' To the same effect, see *Fergen* v. *Lyons,* 162 Wis. 131 [155 N. W. 935, 937]; *Gates* v. *Hutchinson etc. Co.,* 88 Wash. 522 [153 Pac. 322, 324]; *Burgener* v. *O'Holloran, supra.*

Therefore, viewing the lease in the instant case from its four corners, and resolving all conflicting terms, ambiguities, and uncertainties in favor of the lessee, Bacon, we are of the opinion that said lease *by its terms* was to

run for "four years more," or "five years," as it has been differently phrased, at the option of either Bacon or Glenn, that is to say, either of them had the option to *continue the lease in effect for four years* after July 18, 1924. The lease does not, in any view of it, give to the appellant Glenn the right to terminate it in the face of Bacon's election to take the additional term.

This being so, it remains unnecessary to consider the rulings of the court in the admission of evidence.

Judgment affirmed.

Works, P. J., and Craig, J., concurred.