[Civ. No. 154.   Fifth Dist.   Dec. 4, 1962.]

JOHN H. ADAMS et al., Plaintiffs and Respondents, v. WILLIAMS RESORTS, INC., Defendant and Appellant.

Peckinpah, Fryer & Karr for Defendant and Appellant.

Clifford H. Plumley for Plaintiffs and Respondents.

BROWN, J.—This is an appeal by the defendant, Williams Resorts, Inc., a California corporation, from a judgment in favor of the plaintiffs, John H. Adams and Irene B. Adams.

The action is based on a written contract entitled "Agreement of Exclusive Agency and Sublease," dated January 6, 1954, between the plaintiffs, licensed real estate brokers, and the defendant, engaged in the business of subleasing lots as home sites, which lots are carved out of a tract of land around Bass Lake held by defendant under long-term leases from Pacific Gas and Electric Company.

The agreement, in material part, provides that plaintiffs shall have the exclusive right to negotiate the subleasing of lots in the area on a 10 per cent commission basis for a term of five years commencing as of January 1, 1954, and terminating December 31, 1958. It is then agreed that the defendant may, at its option, terminate the agreement in the event plaintiffs fail to negotiate and complete at least 10 subleases per year on the subdivided lots.

The contract further contains a provision of sublease of certain land for an office site for plaintiffs to assist them in carrying out their performance under the contract, at an annual rental of $100, defendant to furnish water and garbage service for $10 each per year; plaintiffs to construct an office building on the leased premises, with the right of removal thereof at the termination of the contract term.

The plaintiffs and the defendant find their problems in the provisions of paragraph IX of the agreement. As originally drafted, the first sentence thereof provided that, "In the event that Second Parties [plaintiffs] have abided by all the terms and conditions of this agreement during the five (5) year term thereof, Second Parties shall have the option to extend the term of this agreement for an additional five (5) years." Prior to execution the words "have the option to" were stricken by a line drawn in ink and the words "at their option and at option of First Party" were handwritten in the margin so the first sentence of the executed contract reads, "In the event that Second Parties have abided by all the terms and conditions of this agreement during the five (5) year term thereof, Second Parties shall at their option and at option of First Party extend the term of this agreement for an additional five (5) years." The second sentence of the same paragraph provides, "In the event Second Parties desire to exercise this option they shall give written notice of such election to First Party not later than 30 days before the 31st day of December, 1958."

Paragraph X of the contract provides, "First Party has entered into this agreement with Second Parties in reliance upon the personal services of Second Parties ..."; then follows

a prohibition against assignment by plaintiffs without defendant's written consent.

That the plaintiffs performed in accordance with their covenants during the original five-year term is not questioned. The record discloses that the plaintiffs gave timely notice of their election to extend the term for an additional five years. There was testimony that plaintiffs delivered to defendant a check for $100 covering rental of the office site for 1959, which check was retained by defendant for approximately three months, was then lost, and was not returned to plaintiffs; that plaintiffs paid by check the rental for 1960, which check was not deposited by defendant and was returned to plaintiffs in August 1960, after the filing of this action. During the year 1959 defendant furnished plaintiffs with maps and other data and made available to them lot listings; plaintiffs negotiated and completed subleases of lots and were paid their commission thereon. Plaintiffs expended time and money in advertising the lots, paid their water bill, repainted the office building, purchased new office signs, and purchased a home at Bass Lake.

Meanwhile, the right of the plaintiffs to extend the term of the agreement by unilateral action was in controversy; both sides consulted attorneys, and plaintiffs and G. E. Williams, president of defendant corporation, met during December 1958, at which time a new contract was apparently discussed, but not executed.

In May 1960, defendant refused to honor a sublease negotiated by plaintiffs and, in 1960, granted an exclusive agency to sublease lots in the tract involved to another real estate broker, the nonappealing defendant, Jack Gyer. Plaintiffs then initiated this action seeking a declaratory judgment adjudicating the rights of plaintiffs under the contract, damages, and a prohibitory injunction. Upon a nonjury trial, the court made appropriate findings of fact and conclusions of law, and judgment was entered pursuant thereto. By the judgment it was declared that the term of the agreement was extended for an additional five years, from January 1, 1959, to December 31, 1963, on the same terms and conditions; plaintiffs were awarded damages of $1,600, less an offset of $300 covering rental of the office site for three years; and defendants were enjoined from the operation of a real estate office on the lands which are the subject of the agreement and restrained from violating plaintiffs' exclusive right to negotiate subleases in accordance with the terms of the agreement.

The principal question presented on this appeal requires a determination of whether or not the language of paragraph IX above set out creates a bilateral option, i.e., one which, to be effective, must be exercised by the joint agreement of both plaintiffs and defendant, or two unilateral options, one capable of being exercised by plaintiffs acting alone, and one capable of being exercised by defendant acting alone.

In construing the meaning of disputed language contained in a contract, the court is not without established standards of interpretation. ■■ The applicable statutory and case-made rules of construction are summed up in *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751 [128 P.2d 665], at pages 760 and 761, as follows:

''The fundamental canon of construction which is applicable to contracts generally is the ascertainment of the intention of the parties (Civ. Code, § 1636), . . .

■■ ''As an aid in discovering the all-important element of intent of the parties to the contract, the trial court may look to the circumstances surrounding the making of the agreement [citations], including the object, nature and subject matter of the writing [citations], and the preliminary negotiations between the parties [citations], and thus place itself in the same situation in which the parties found themselves at the time of contracting. [Citations.] ■■ Also applicable here is the familiar rule that when a contract is ambiguous, a construction given to it by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight, and will, when reasonable, be adopted and enforced by the court. [Citations.] The reason underlying the rule is that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the correct legal interpretation of the terms of the contract, and a practical construction placed by the parties upon the instrument is the best evidence of their intention.''

In support of the judgment, plaintiffs cite and rely on *Glenn* v. *Bacon*, 86 Cal.App. 58 [260 P. 559]. There, a lease from Glenn to Bacon provided for a term of one year ''with option of four more years.'' In a subsequent clause it was provided, ''It is expressly agreed and understood that the said lease shall run *at the option of the parties* hereto for five years from date hereof.'' [Emphasis added.] Bacon elected to take the additional term and Glenn sued in unlawful detainer. On appeal from the judgment for Bacon, the court was called upon to construe the meaning of the option provision. The

appellant's contention that the language which we have emphasized meant that the additional term should only become effective upon the *joint* agreement of the appellant and the respondent was rejected and it was held that the term "at the option of the parties" gave to either Glenn or Bacon the option to continue the lease in effect for the additional four-year term. In view of the fact that in that opinion the law of this state as well as case law borrowed from sister states is comprehensively reviewed, it would serve no purpose for us to here repeat the rules and principles there enunciated. The underlying reasoning of the court in *Glenn* and cases cited therein may be briefly restated and applied to our case thusly: That the parties intended an option or options to be a subject of their contract is evident. As originally typed, only plaintiffs had an option and the second sentence of paragraph IX provides for the method and time of exercise thereof. It is clear that it was intended that plaintiffs have an option. The handwritten modification contains the word "option" twice, once relating to plaintiffs and once relating to defendant. It does not necessarily follow from the use of the conjunction "and" that a joint agreement was intended. ■■■ It has often been stated that the words "and" and "or" may be construed as interchangeable in order to effect the true meaning of parties to a contract *(Universal Sales Corp.* v. *California Press Mfg. Co., supra,* 20 Cal.2d 751, 776; *Homer Laughlin Engineers Corp.* v. *J. W. Leavitt & Co.,* 116 Cal.App. 197, 201 [2 P.2d 511]). ■■■ The word "option" implies a right or power of election, or choosing, or preference. [■■ To construe the language here in question as meaning that the additional term of five years should only become effective upon the joint agreement of both plaintiffs and defendant would destroy the right or power of either to choose or elect. Complete mutual agreement would be necessary. Obviously, the contracting parties have a legal right at the termination of the original term of their contract to agree to an extension thereof. An "option" so stating gives to neither an additional right. Either the plaintiffs and the defendant intended the phrase under consideration to mean that either Adams or Williams Resorts had an option to extend the term by unilateral action, or the insertion of paragraph IX in the agreement was without purpose. We must follow the path blazed by the court in *Glenn* and the cardinal rule of interpretation which requires us to give the option provision such construction as will make it effective and enforceable, rather than void and unenforceable

(Civ. Code, § 3541). It appears that the construction given by the trial court to the option provision of the agreement in suit is consistent with the true intent of the contracting parties and each had an option, unilateral in its operation, to extend the term of the agreement.

Appellant devotes a substantial portion of its briefs to the task of demonstrating by argument and authority that the term of the agreement was not extended by acquiescence or estoppel by conduct of the defendant. The theory of defendant's acquiescence to the plaintiffs' written notice of their election to take the additional term made its appearance in a special finding requested by defendant, which was apparently based on testimony relating to the conduct of the plaintiffs and the defendant. ■■■ It is fundamental law that an option, upon exercise by the optionee in accordance with its terms, ripens into a binding contract (*Parker* v. *Beach*, 176 Cal. 172, 176 [167 P. 871]) ; no promise or other action by the optionor is required (*Seeburg* v. *El Royale Corp.*, 54 Cal.App.2d 1, 4 [128 P.2d 362] ; ■■■ and ". . . the option contract gives the optionee a right against the optionor for performance of the contract to which the option relates upon the exercise of the option, which the optionor cannot defeat by repudiating the option" (*Warner Bros. Pictures, Inc.* v. *Brodel*, 31 Cal.2d 766, 773 [192 P.2d 949, 3 A.L.R.2d 691]). ■■■ The trial court having found that plaintiffs had, and properly exercised, an option to extend the term of the agreement, it was unnecessary, but harmless, to make a special finding that defendant had acquiesced to the extension.

Defendant lastly contends that the court erred in granting the equitable remedy of a prohibitory injunction because as to plaintiffs, the contract is one for personal services and it therefore cannot be specifically enforced indirectly by an injunction against its breach for it does not furnish a basis for mutuality of remedy. Plaintiffs contend the agreement is also a sublease and therefore is a proper subject for specific performance.

■■■ Again turning to the agreement, it is therein expressly stated that, "In connection with this agreement and for the purpose of assisting Second Parties in carrying out their obligations under the terms of this agreement, . . ." certain property is demised by defendant to plaintiffs and its use restricted to a real estate brokerage business in consideration of only a token rental. Defendant entered into the agreement "in reliance upon the personal services of" plaintiffs. It is clear from the express terms of the contract that the main pur-

pose of defendant was to secure the services of plaintiffs. We are thus led to the ineluctable conclusion that the contract is one primarily calling for the personal services of plaintiffs extending over a long period of time, although as an incident thereto it bears some aspects of a sublease.

As early as 1863 the Supreme Court, in *Cooper* v. *Pena,* 21 Cal. 403, declined to decree specific performance of an agreement to convey land in consideration of personal services which had not been fully performed, stating that the plaintiff could not be compelled to complete the agreed services, and his offer to complete them was not the equivalent to actual performance. ''As this is an obligation which the Court cannot enforce, there is no principle which would justify it in enforcing the obligation on the other side; and the only course is to decline to interfere, and leave the plaintiff to his remedy for damages.'' (*Cooper* v. *Pena, supra,* p. 412.)

The principle is statutory (Civ. Code, §§ 3386, 3390) and has been applied in numerous cases decided since *Cooper.* (*Lyon* v. *Goss,* 19 Cal.2d 659, 674 [123 P.2d 11]; *Long Beach Drug Co.* v. *United Drug Co.,* 13 Cal.2d 158, 172 [88 P.2d 698, 89 P.2d 386]; *O'Brien* v. *O'Brien,* 197 Cal. 577, 588 [241 P. 861]; *Poultry Producers etc., Inc.* v. *Barlow,* 189 Cal. 278, 288, 289 [208 P. 93].) Equally familiar is the rule that, with exceptions not relevant here, an injunction cannot be granted to prevent the breach of a contract which would not be specifically enforced (Civ. Code, § 3423, subd. 5; Code Civ. Proc., § 526, second subd. 5; *Long Beach Drug Co.* v. *United Drug Co., supra,* 13 Cal.2d 158; *Anderson* v. *Neal Institutes Co.,* 37 Cal.App. 174, 178, 179 [173 P. 779]; 27 Cal. Jur.2d, Injunctions, § 22, p. 129; 45 Cal.Jur.2d, Specific Performance, § 88, p. 381). The order granting plaintiffs preventive relief is therefore erroneous.

Plaintiffs' argument that defendant is precluded from challenging the injunctive portion of the judgment on appeal because it failed to raise the issue in the court below is without merit. The complaint is, by its title, allegations and prayer, one seeking an injunction. The issue of whether or not plaintiffs are entitled to an injunction was framed by that complaint and defendant's answer thereto and was preserved in the pretrial order. Upon trial it was squarely before the court.

The cause is remanded to the superior court and that court is directed to modify the judgment by striking therefrom the prohibitory injunction. As so modified, the judgment is affirmed.

Conley, P. J., and Stone, J., concurred.